(C.D. 2095)

MOTTAHEDEH CREATIONS, LTD., ET AL. *v.* UNITED STATES

United States Customs Court, First Division

(Decided July 8, 1959)

*Brooks & Brooks* (*J. Joseph McDermott* of counsel) for the plaintiffs.
*George Cochran Doub,* Assistant Attorney General (*Murray Sklaroff* and *Margaret Kiley,* trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

WILSON, Judge: The merchandise in the case at bar consists of certain articles composed of wrought iron, which were classified under paragraph 1518 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, supplemented by T.D. 51898, as articles in chief value of artificial flowers, fruits, or leaves, composed wholly or in chief value of "other" materials. In protests 293986–K and 297523–K herein, the rate of duty assessed was 45 per centum ad valorem. The merchandise covered by the remaining protests was classified under the same paragraph of the act, but, since it was imported after the effective date of the Japanese Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 53865, supplemented by T.D. 53877, said merchandise was assessed with duty at the rate of 35 per centum ad valorem.

Plaintiffs claim the merchandise is properly classifiable under paragraph 397 of the Tariff Act of 1930, as modified by T.D. 51802, *supra,* at the rate of 22½ per centum ad valorem as "articles or wares not specially provided for * * * composed wholly or in chief value of iron * * * or other metal (not including platinum, gold, or silver),

but not plated with platinum, gold, or silver, or colored with gold lacquer," under the provision in said modified paragraph for "other" articles. It was agreed between counsel for the respective parties that if the merchandise is not classifiable under paragraph 1518, *supra*, then it is properly classifiable as claimed.

A number of exhibits were received in evidence as representative of the imported merchandise. Plaintiffs' exhibit 1 (R. 10–11), covered by entry number 925640 in protest 293986–K and invoiced as "Piante di giglio," consists of a potted lily plant. Defendant's exhibit A, a catalog, issued by the importer herein and distributed to persons in the trade with whom the importer had dealt, described this article as follows:

RUBRUM LILY

Here is all the beauty with which the lily is endowed. Buds and flowers in true Rubrum lily pink, in dark green cache pot with gold accents.

Plaintiffs' exhibit 2, covered by entry number 723399 in protest 297523–K and invoiced as "X 818—LAMP BASES," represents a rose bush in natural colors, set in a cache pot. Defendant's exhibit A (p. 2) describes this item as:

ROSE BUSHES IN THE FRENCH 18TH CENTURY MANNER

A bold spray of flowers and leaves in natural colors. The square cache pots are in Pompeian red, with antique black accents.

Plaintiffs' exhibit 3 (R. 13–14) is invoiced in entry number 812891, covered by protest 312924–K, as "X 835—LAMP BASES" and is also a potted lily plant identical in all details with plaintiffs' exhibit 1, except in color.

Plaintiffs' exhibit 4 (R. 14–15), described on the invoice in entry number 829925 (protest 315881–K) as "X 801—CANDLESTICKS," simulates an apple tree. Plaintiffs' collective exhibit 9, also an advertising brochure put out by the importer, states as to this merchandise:

ESPALIER CANDLE TREE

An apple tree adorned with fruit and blossoms and a trio of birds plumaged in natural colors. Candles stand on spiked ends of boughs.

Plaintiffs' exhibit 5 (R. 15–16) (entry number 808488 in protest 314748–K), invoiced as "X 802—LAMPE BASES," represents an "Espalier Apple Tree" standing in a cache pot, with apples, branches, and leaves in natural colors. The item contains a threaded portion at the top of the branch which runs through the center of the article. Respecting this exhibit, defendant's exhibit A states:

ESPALIER TREE BECOMES A LAMP

Espalier Apple Tree profuse with ripe apples. Hollow center makes electrification easy.

Plaintiffs' exhibit 6 covered by protest 315881–K and 317864–K, (invoiced as "X 815—CANDLESTICKS"), is a twin candlestick set in joined branches, which make the base of the article, containing a bird, leaves, and strawberries in natural colors.

Only two witnesses testified, both on behalf of the plaintiffs.

Mary Lyons, an employee of the importer herein, whose duties consisted of handling mail orders for such merchandise, testified respecting plaintiffs' exhibit 5 that a little cap or finial to cover the threaded portion is supplied a customer, when requested, but that there was no cap on the article when imported (R. 15–16).

Rafi Mottahedeh, president of the plaintiff concern, testified that he had supervised the designing of the merchandise at bar (plaintiffs' exhibits 1 to 6) and had directed the ordering and selling of such goods (R. 22–23). The witness stated that a metal rod, colored, about 1 foot 8 inches in length and three-eighths of 1 inch in diameter (plaintiffs' exhibit 7), having holes at both ends for insertion of wiring, had been sold with articles like plaintiffs' exhibits 1, 2, and 3 for mounting as lamps, and that such articles had been thus mounted as lamp bases (R. 25, 27), explaining, in this connection, that articles such as plaintiffs' exhibits 1, 2, 3, and 5 were not mounted as lamp bases in Italy before importation because "Generally their mounting does not meet the requirements of the state—New York State" (R. 27). Mr. Mottahedeh also testified that he had seen articles such as plaintiffs' exhibits 4 and 6 used with candles (R. 28). He stated that he had seen plaintiffs' exhibit 5 used with candles and also as a lamp and that said item does not require the use of a rod for the latter purpose, inasmuch as it is "ready for wiring," the branch running through the article having an opening at the top and in the base (R. 28). Mr. Mottahedeh further testified that for the conversion of plaintiffs' exhibits 1, 3, and 4 into lamps with the use of a metal rod an opening has to be made by drilling a hole through the base.

Counsel for the plaintiffs in its brief directs our attention to the case of *L. Tobert Co., Inc., and American Shipping Co.* v. *United States*, 40 Cust. Ct. 586, Abstract 62036, involving certain silver-plated candlesticks with candelabra branches and candelabra, plated with silver on nickel silver or copper. The court therein held the merchandise was excluded from paragraph 339 of the Tariff Act of 1930 for "household utensils," as classified, and that it was properly classifiable under paragraph 397 of the act as "Articles or wares not specially provided for," plated with silver on nickel silver or copper. It appeared that the chief use of the subject merchandise in the United States was for decoration or ornamentation, its use for illumination being incidental. The issues involved in the cited case, *supra*, were, however, unlike those in the case at bar. Here, the competition is between paragraph 397 of the act, as modified, *supra*, for metal

articles, not specially provided for, and paragraph 1518, as modified, *supra*, covering articles in chief value of artificial flowers, fruits, leaves, or stems. It has not been established that, as imported, the involved wrought iron articles, with the exception of merchandise represented by plaintiffs' exhibit 6, are lamp bases, candelabra, or candlesticks, which would render them classifiable under paragraph 397 of the act (*Nife, Inc.* v. *United States*, 40 Cust. Ct. 448, Abstract 61550). See also *Same* v. *Same*, 40 Cust. Ct. 570, Abstract 61976.

In *Cochran Co. et al.* v. *United States*, 10 Ct. Cust. Appls. 62 (1920), T.D. 38336, the merchandise involved consisted of (1) a spray of artificial leaves on a stem upon which was set one brown and three blue oblate spheroids composed of straw; (2) a cluster made of black straw wound into the form of berries or grapes and set on a black straw leaf attached to a stem of black straw and metal; and (3) a spray of leaves bearing a rose, all made of black straw sewed to a woven fabric. All these were held to be properly assessed as artificial flowers and leaves (paragraph 347 of the Tariff Act of 1913). In so deciding, the court, referring to items (2) and (3), *supra*, stated:

> It may be that neither exhibit truly represents any natural flower, fruit, leaf, or stem. Nevertheless, both come within the tariff designation of "artificial and ornamental fruits, grains, leaves, flowers, and stems," inasmuch as they are articles which simulate the natural fruit, flower, leaf, or stem in its physical characteristics and appearance sufficiently to cause them in common understanding to be regarded as leaves, stems, flowers, or fruits produced not by nature, but by the hand of man, and which at the same time are appropriate and suitable to be used for those purposes of ornamentation to which the natural products may be temporarily devoted.

The most recent opinion of our appellate court on the issue herein was expressed in *Marshall Field & Co.* v. *United States*, 45 C.C.P.A. (Customs) 72, C.A.D. 676. There, certain merchandise invoiced as "Iron Works, Metal fruits w/leaves" and other merchandise invoiced as "Iron pictures of 4 season flowers rusty finish with dull black wooden frame" were classified as "artificial fruits" and "artificial flowers," respectively, under paragraph 1518, as modified, *supra*, and claimed properly dutiable under paragraph 397 of the act as articles or wares in chief value of base metal. The merchandise described as "Iron Works, Metal fruits w/leaves" consisted of a three-dimensional, realistic representation of a stem, about 6 inches long, attached to which were four short branches, three of the latter containing leaves about 3 inches long and the fourth branch having attached thereto an object resembling a small pomegranate. The color of the whole was that of slightly rusty iron. An illustrative sample of the "Iron pictures of 4 season flowers" disclosed a framed representation of simulated flower stems of roughened wire from which ran a number of branches bearing leaves and flowers somewhat like large daisies.

In the *Marshall Field* case, *supra*, our appellate court, in holding that the involved "iron works" and "iron pictures" were not dutiable as artificial fruits or flowers, respectively, under paragraph 1518, *supra*, accentuated the testimony of appellant's witness that "both types of the involved merchandise are hung on walls." In this connection, the court, page 75, stated:

\* \* \* In common understanding natural flowers and pictures have little in common as to use or otherwise. One could as logically argue that a picture of a flower is an artificial flower.

In commenting on the *Cochran* case, *supra*, the court, in the *Marshall Field* case, page 80, stated:

\* \* \* The court decided the issues, as it has in every other case we have reviewed, *on the basis of its own judgment* as to whether the merchandise before it was or was not *in common understanding* an artificial fruit, leaf or flower. Thus, on a case by case basis, the court construes and sets the limits of the statutory language by a process of inclusion and exclusion. It is by this process that we determine "common meaning," which it is our province to do and as to which we are bound by no evidence. *United States* v. *Felsenthal & Co.*, 16 Ct. Cust. Appls. 15, T.D. 42713; *United States* v. *May Department Stores Co.*, 16 Ct. Cust. Appls. 353, T.D. 43090; *United States* v. *North American Mercantile Co.*, 17 C.C.P.A. (Customs) 378, T.D. 43820; *United States* v. *H. A. Caesar & Co.*, 18 C.C.P.A. (Customs) 106, T.D. 44067; *California Fruit Wrapping Mills (Inc.)* v. *United States*, 19 C.C.P.A. (Customs) 381, 385; *Hummel Chemical Co.* v. *United States*, 29 C.C.P.A. (Customs) 178, C.A.D. 189; and see also *American Bead Co.* v. *United States*, 7 Ct. Cust. Appls. 18, 21, T.D. 36259, and decisions of the United States Supreme Court there cited. [Italics quoted.]

And, at page 81, the appellate court further stated:

It will be seen from the cases above mentioned that many different factors were taken into consideration in determining whether the articles in each case were artificial fruits or flowers. These factors were not limited to the two questions of closeness of simulation and suitability to the ornamental uses of real flowers referred to in the *Cochran* opinion but included others such as size, primary function, other recognized names, uses and applicable tariff act provisions, and ordinary common sense. The situation must be viewed as a whole.

\*　　\*　　\*　　\*　　\*　　\*　　\*

We hold, on the ample evidence before us, that the metal fruit with leaves exemplified by Exhibit 1 is not in the category of "artificial fruits," as classified, because in our judgment it is *properly described as a wrought iron wall decoration using a fruit and leaf motif.* We believe that the common understanding of the term "artificial fruit" does not encompass such iron objects, particularly when their overall color is that of oxidized iron so as to give the observer the distinct and immediate impression that it is a work of wrought iron, to be used where it is desired to add a touch of wrought iron to the interior décor, not where one would normally use real fruit or close imitations thereof in form and color.

The "iron pictures" exemplified by Exhibit 2 we hold are not in the category of "artificial flowers" wherein they were classified. They are a species of three-dimensional monochrome pictorial compositions mounted in frames and are

obviously to be used as framed pictures are used, hanging on a wall as testified. This is not the use to which real flowers are normally put, nor the close imitations thereof which might be mistaken therefor.

In its decision in the *Marshall Field & Co.* case, *supra*, the appellate court made reference also to the case of *Coro, Inc.* v. *United States*, 39 C.C.P.A. (Customs) 154, C.A.D. 478. The articles involved in the latter case were used for costume jewelry designed to be attached to dresses, coats, and hats of women as ornaments. They were described as composed of metal and glass, consisting of three layers of metal in trefoil form superimposed on one another in successively smaller diameters, the trefoil portions being black in color with a bright silver-like edging. In the center of the outer face of the brooch, there was a short metal post on which was mounted a piece of glass having facets like those of a round cut diamond. The court, in the *Coro* case, observed that the portion of the brooch apart from the pin "may be said to be in the form of a conventional flower." There was nothing in the record therein to show that the flower-like portion of the exhibit was ever used by itself or for use in ornamenting wearing apparel. After quoting the so-called rule of interpretation, as given in the *Cochran* case, *supra*, as to what constitutes "artificial and ornamental fruits, grains, leaves, flowers, and stems," the court, in the *Coro* case, *supra*, page 157, stated:

In our opinion, even though it may be said that the involved articles are conventionally flower-like, they are neither appropriate nor suitable for the well-known purposes of ornamentation to which artificial [that *natural* was intended is clear from the context] flowers may be temporarily devoted. They are simply costume jewelry in the form of brooches which, omitting the pin portion, may be said to look like the form of some kind of a flower. It would tax the imagination to picture such articles as being artificial flowers in accordance with common understanding.

As noted by the appellate court in the *Marshall Field & Co.* case, *supra*, at page 79 thereof, the court in the *Coro* case held, "of course," that the articles involved in the latter were not artificial flowers, in chief value or otherwise, and that it so held quite clearly on two grounds:

The first of these grounds was that they were not "artificial flowers" because they were not suitable for the purposes *of ornamentation* to which natural flowers may be temporarily devoted (temporarily, we presume, only because natural flowers are evanescent). * * *

&ast;. &ast; &ast; &ast; &ast; &ast; &ast;

Thus an artificial flower can of course be used to ornament but it does not follow, in logic, that because a thing can be used to ornament it is necessarily an artificial flower, even though it has some other flower-like characteristics.

The second ground of decision in the *Coro* case was emphatically stated in the words: "It would tax the imagination to picture such articles as being artificial flowers *in accordance with common understanding*." Our added emphasis is for the purpose of pointing up the gist of the entire situation. [Italics quoted.]

In our opinion, the items here involved, with the exception of merchandise represented by plaintiffs' exhibit 6, are properly classifiable under paragraph 1518 of the Tariff Act of 1930, as modified, *supra*, as "artificial or ornamental fruits * * * leaves, flowers, stems, or parts thereof," as classified. The fact that these articles are composed of wrought iron is not alone determinative of their classification. In the *Marshall Field* case, *supra*, the holding therein was apparently predicated upon the fact that the primary function of the involved iron pictures was to be hung as pictures on walls and that "in common understanding natural flowers and pictures have little in common as to use or otherwise." There, the "flower" motif was secondary, a factor unlike that in the case at bar. The items here represented by plaintiffs' exhibit 1 ("RUBRUM LILY"), plaintiffs' exhibit 2 ("ROSE BUSH"), and plaintiffs' exhibit 3 ("LILY PLANT"), enclosed in a cache pot, are dedicated to the same uses to which articles containing natural flowers, leaves, stems, etc., might be employed, for decorative or ornamental purposes, and simulate the natural plants and bush in substantial details.

In order to render merchandise classifiable as "artificial [and] ornamental fruits, grains, leaves, flowers, and stems, or parts thereof," an exact imitation is not essential. *Johnson & Co.* v. *United States*, 10 Ct. Cust. Appls. 54, T.D. 38333. "A man-made article is an artificial flower if it looks enough like a flower (real or imaginary) to be regarded as an artificial flower 'in common understanding.' " *Marshall Field & Co.* case, *supra*. In our opinion, the merchandise represented by plaintiffs' exhibits 1 and 3 meets that test.

Plaintiffs' exhibit 2 ("ROSE BUSH") presents to the viewer flowers, leaves, and stems which also simulate the natural flower, leaf, and stem in physical characteristics and appearance sufficiently to cause them in common understanding to be regarded as artificial flowers, leaves, and stems. The overall color and effect of this item and the others above mentioned, unlike the iron pictures involved in the *Marshall Field* case, *supra*, are not just that of oxidized iron "so as to give the observer the distinct and immediate impression that it is a work of wrought iron, to be used where it is desired to add a touch of wrought iron to the interior décor," but, in our opinion, the distinct and immediate impression conveyed to the viewer by these items is one of sameness in form or color to the real plant or bush they represent, even though their composition may be of wrought iron. It does not "tax the imagination" to picture such items as being artificial plants, or an artificial bush, "in accordance with common understanding." *Coro, Inc.*, case, *supra*.

As heretofore noted, the plant or bush portion of plaintiff's exhibits 1, 2, and 3 is enclosed in a "cache pot." In this connection, we find in

Webster's New International Dictionary, second edition, 1956, page 371, the following definition:

cache pot * * * An ornamental casing for a flowerpot.

The above definition lends some support to the conclusion that the above floral representations here thus enclosed are similar in manner of use to the natural plant or bush.

Plaintiffs' exhibits 4 and 5, so-called Espalier apple trees, also present the overall color and effect of artificial flowers, leaves, and stems, and are likewise properly classifiable, in our opinion, under the provisions of paragraph 1518 of the tariff act, as modified, *supra*. The tariff designation here in question is not confined to an article "in chief value of an apple tree." Accordingly, simulation to the natural fruit, flower, leaf, or stem in physical characteristics and appearance, so as to cause the articles to be regarded within the common understanding as the artificial counterparts of the real products of nature, is sufficient for classification of plaintiffs' exhibits 4 and 5 under the artificial or ornamental fruit or flower provision of the tariff act, and we so hold.

Plaintiffs contend herein that the involved items of merchandise are "lamp bases" and "candlesticks" and that they are thus properly classifiable under paragraph 397 of the Tariff Act of 1930, as modified, *supra*. The difficulty with that proposition, in our opinion, is that, in their condition as imported, the involved articles are not lamp bases or candlesticks, but require further manipulation or mounting after importation to render them fit for such purposes. Further, it has not been established in the record herein that these items have been designed or manufactured for exclusive use as lamp bases or candlesticks. It is well established that if merchandise is to be classified by ultimate use, within a tariff designation, it must be dedicated to such use. *National Carloading Corp.* v. *United States*, 44 C.C.P.A. (Customs) 77, C.A.D. 640. If these articles had been designed for the indicated uses, then, in that case, it would appear that the flower motif in these articles would be of secondary signification and the situation would be in accord with that which obtained in the *Marshall Field* case, *supra*, thus calling for the same determination as there given. But such is not the case here. There is nothing in this record to establish that the use of the involved articles as lamp bases or candlesticks is anything but casual or incidental. True, items such as plaintiffs' exhibits 4 and 5 could be used as "candlesticks" by employment of the spiked branches, but we can hardly visualize such use as anything but incidental.

Specifically, the importer maintains that plaintiffs' exhibit 5 ("Espalier Apple Tree"), containing a threaded opening at the top of the center branch, is "ready for wiring" and that, accordingly, its dedication for use as a lamp base has been established. The record

discloses, however, with respect to such items, that a "finial" or cap, for use in closing up the threaded opening, is given to the customer at the time of sale, if requested. How often the article is sold with the cap or without the covering does not, however, appear in the record, and, upon such a lack of showing, we cannot say that the item in question is manufactured exclusively for or dedicated to use as a lamp base.

Plaintiffs' claim with respect to merchandise represented by plaintiffs' exhibit 6 should, in our opinion, be sustained. We predicate this conclusion under the same reasoning employed by our appellate court in the *Marshall Field* case, *supra*. The dedication of this item to specific use as a wrought iron candestick holder, using a flower and leaf motif, is paramount in our determination. ·

For all the reasons stated, we hold the merchandise represented by plaintiffs' exhibits 1, 2, 3, 4, and 5 properly dutiable under paragraph 1518 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, supplemented by T.D. 51898, or under said paragraph of the act, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865, supplemented by T.D. 53877, under the provisions of said modified paragraph as articles, not specially provided for, composed wholly or in chief value of artificial or ornamental fruits, leaves, flowers, stems, or parts thereof, when composed wholly or in chief value of "other" materials, as classified, at the rate of 45 per centum, or at the rate of 35 per centum ad valorem, whichever rate is applicable in each specific instance. With respect to such items, the protests are, accordingly, overruled. Further, we hold the merchandise represented by plaintiffs' exhibit 6 properly dutiable under paragraph 397 of the Tariff Act of 1930, as modified by T.D. 51802, *supra*, at the rate of 22½ per centum ad valorem as "articles or wares not specially provided for * * * composed wholly or in chief value of iron * * * or other metal," under the provision in said modified paragraph for "other" items, as claimed. To this extent, the claim in these protests with respect to merchandise represented by plaintiffs' exhibit 6 is sustained. In all other respects and as to all other merchandise, the protests are overruled. Judgment will be entered accordingly.