(C. D. 2216)

Joseph Markovits, Inc. v. United States

United States Customs Court, First Division

(Decided November 14, 1960)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

WILSON, Judge: The merchandise herein involved consists of certain glass balls on chenille-covered stems (plaintiff's collective illustrative exhibit 1), which were classified for duty under paragraph 1518 of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865, supplemented by T.D. 53877, at the rate of 35 per centum ad valorem, as artificial fruits, not specially provided for, and which are claimed properly dutiable under paragraph 218(f) of the act, as modified, *supra*, at 30 per centum ad valorem as articles, not specially provided for, in chief value of colored glass and valued not over $1.66⅔ each. The particular items under protest are shown on the invoice as 25-millimeter glass balls with chenille stems and 16-millimeter glass balls with chenille stems. It was stipulated that the merchandise represented by plaintiff's collective illustrative exhibit 1 is in chief value of glass, is colored, and is valued at not more than $1.66⅔ each (R. 6,7).

The only testimony introduced in this case was that of Arnold G. Harris, called as a witness on behalf of plaintiff, who stated that he has been employed for 7 years as a buyer-salesman for Joseph Markovits, Inc., importer of Christmas goods, artificial flowers, artificial fruits, and feathers. The witness testified that he had purchased and sold items such as here involved, the items in question being imported in Christmas green, red, silver, gold, royal blue, ice blue, pink, chartreuse, and cerise colors (R. 6). It further appears that, after importation, the merchandise is sold by the plaintiff to manufacturers of Christmas corsages and package decorations (R. 8), the record disclosing that the imported glass balls may be and are used with other items, such as a Santa Claus, and are worked into a cluster with silver or green-lacquered leaves to make a corsage (plain-

tiff's illustrative exhibit 2) and either worn as such or used to trim packages. Mr. Harris further testified that he had imported glass balls, such as those at bar, packaged alone, which items are sold in chainstores and variety stores and which, after purchase, may be used for trimming packages. As illustrative of the type of merchandise used as a package decoration, there was introduced in evidence, as plaintiff's illustrative exhibit 3, an item consisting of four glass balls of varied colors with chenille stems, contained in a cellophane wrapper, the largest ball being of approximately the same size as the largest ball contained in plaintiff's collective illustrative exhibit 1. The witness further stated that an item, such as plaintiff's illustrative exhibit 2, is used only during the Christmas season (R. 13).

Plaintiff's witness further testified that he had purchased and sold artificial fruits and flowers for the past 14 years and that he had only sold merchandise, such as plaintiff's collective illustrative exhibit 1, as a Christmas item and never as an artificial flower and that, in his opinion, the imported glass balls are not artificial flowers because the merchandise represented by the exhibit under consideration neither simulates nor resembles any natural fruit or flower in physical characteristics (R. 14). Mr. Harris agreed that defendant's exhibit A, "substantially the same size" as the glass balls in plaintiff's collective illustrative exhibit 1 (R. 17), and defendant's exhibit B, purple glass balls on stems, are familiar to him as an artificial fruit, simulating grapes (R. 16). The witness stated, however, that the stem in defendant's exhibit A is not chenille but is a wire stem "which is definitely used for table fruits, not as a corsage" (R. 18). Mr. Harris subsequently testified that he had seen artificial fruits used in a corsage.

The issue here for determination is whether or not the imported glass balls on chenille stems, as represented by plaintiff's collective illustrative exhibit 1, are artificial fruits. The test for classification of merchandise in cases of this character has been stated to be whether the involved article may be regarded as an artificial flower "in common understanding." In the case of *Mottahedeh Creations, Ltd., et al. v. United States*, 43 Cust. Ct. 9, C.D. 2095, this court, in resolving the issue such as here presented, at page 16, referred to the decision of our appellate court in *Marshall Field & Co. v. United States*, 45 C.C.P.A. (Customs) 72, C.A.D. 676, and stated as follows:

* * * "A man-made article is an artificial flower if it looks enough like a flower (real or imaginary) to be regarded as an artificial flower 'in common understanding'." *Marshall Field & Co.* case, *supra.* * * *

In *Marshall Field & Co. v. United States*, 45 C.C.P.A. (Customs) 72, C.A.D. 676, the involved merchandise consisted of two types: Certain "Iron Works, Metal fruits w/leaves," consisting of a three-dimen-

sional, realistic representation of a stem, about 6 inches long, to which were affixed four short branches, three of which had representations of leaves on them about 3 inches long, and the fourth having an object about 8 inches in circumference attached thereto which looked like a small pomegranate with a segment of outer skin removed, exposing the inner cells. The color of the whole was that of slightly rusty iron. Also under consideration was merchandise described as "Iron pictures of 4 season flowers," the framed representation of which consisted of simulated flower stems of roughened wire from which ran a number of branches bearing nine leaves and two flowers somewhat like large daisies, the ends of the petals being more or less curled inwardly. The leaves and flowers were formed from light gauge sheet metal, and the illustrative sample in evidence was painted black. The record disclosed that these so-called "4 seasons" pictures came in sets of four; that they were sold singly or in pairs or in the complete set of four and that the flowers represented the four seasons to the Chinese people; that the pictures were used as imported, but sometimes people put a velvet backing behind them. It further appeared that both types of the involved merchandise were hung on walls, a factor which was emphasized by our appellate court in the *Marshall Field* case, *supra*.

In upholding the appellant's contention that the merchandise there involved was not properly classifiable as artificial fruits or flowers, the court, in the *Marshall Field* case, *supra*, at page 81, stated:

We hold, on the ample evidence before us, that the metal fruit with leaves exemplified by Exhibit 1 is not in the category of "artificial fruits," as classified, because in our judgment it is properly described as a wrought iron wall decoration using a fruit and leaf motif. We believe that the common understanding of the term "artificial fruit" does not encompass such iron objects, particularly when their overall color is that of oxidized iron so as to give the observer the distinct and immediate impression that it is a work of wrought iron, to be used where it is desired to add a touch of wrought iron to the interior décor, not where one would normally use real fruit or close imitations thereof in form and color.

The "iron pictures" exemplified by Exhibit 2 we hold are not in the category of "artificial flowers" wherein they were classified. They are a species of three-dimensional monochrome pictorial compositions mounted in frames and are obviously to be used as framed pictures are used, hanging on a wall as testified. This is not the use to which real flowers are normally put, nor the close imitations thereof which might be mistaken therefor.

In support of the classification here made by the collector, the defendant, in its brief, directs our attention to the holding of the court in *Rice, Bayersdorfer Co.* v. *United States*, 3 Cust. Ct. 438, Abstract 42424. That case, however, is distinguishable from the case at bar. In the cited case, the merchandise was classified as artificial flowers in chief value of beads and was claimed dutiable as artificial flowers, composed in chief value of glass. The sample in evidence consisted

of a group of three wires, each approximately a foot long, joined together at one end, and for a space of about 2 inches from the joining, wrapped in tin foil. From that point almost to the end of each of the wires, they were covered by a long glass tube which, at regular intervals, had been blown or bulged in such a manner that it appeared to be a series of individual beads. There was, however, no separation between each of the bulges, the entire glass part of the article being in one piece. The court held these bulges not to be beads. The issue in the *Rice, Bayersdorfer Co.* case, *supra*, was different from that in the present case. Also, there, it was conceded by both sides that the merchandise consisted of artificial flowers, composed in chief value of glass, a concession which does not obtain in the case at bar.

Samples are potent witnesses. *United States* v. *The Halle Bros. Co.*, 20 C.C.P.A. (Customs) 219, T.D. 45995. A visual inspection of the representative sample, plaintiff's collective illustrative exhibit 1, persuades us that the imported merchandise does not simulate any natural fruit either in appearance or in physical characteristics so as to be regarded as artificial fruits within the common understanding. As heretofore noted, the involved item is used either in making up a Christmas corsage as a Christmas decoration or is also used to decorate packages, obviously as a ribbon might be used on a package for decorative purposes, which uses are not those for which natural fruits are normally used nor are they the uses of close imitations of natural fruits. The mere fact that an article can be used for ornamental purposes does not necessarily make it an artificial flower or fruit, even though it has some other flower or fruitlike characteristics. *Marshall Field & Co.* case, *supra*. The glass balls here involved do not, in our opinion, even crudely resemble any natural fruit. We cannot leave their acceptance as artificial fruit to mere speculation. Our appellate court, in *Coro, Inc.* v. *United States*, 39 C.C.P.A. (Customs) 154, C.A.D. 478, in resolving the proper classification of certain costume jewelry in the form of brooches, designed to be attached to women's wearing apparel as ornaments, stated:

\* \* \* It would tax the imagination to picture such articles as being artificial flowers in accordance with common understanding.

The aforesaid construction is equally applicable, in our opinion, to the imported items here under consideration.

For all of the reasons stated, and in accordance with the applicable law as set forth by the court in the cases heretofore referred to, we hold the involved merchandise properly classifiable under paragraph 218(f) of the Tariff Act of 1930, as modified by the Japanese Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 53865, supplemented by T.D. 53877, at the rate of 30 per centum ad valorem as articles, not specially provided for, in

chief value of colored glass and valued not over $1.66⅔ each, as claimed. The protest in this case is sustained.

Judgment will be rendered accordingly.