(C.D. 2221)

Novik & Co., Inc. *v.* United States

United States Customs Court, First Division

(Decided November 28, 1960)

*Siegel, Mandell & Davidson* (*Sidney Mandell* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

WILSON, Judge: The merchandise in the case at bar consists of certain bridal headdresses, which were assessed for duty at the rate of 50 per centum ad valorem under paragraph 1518 of the Tariff Act of 1930, as modified by the Japanese Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865, and T.D. 53877, as articles not specially provided for, composed of artificial or ornamental flowers, leaves, stems, or parts thereof. Plaintiff claims the merchandise is properly classifiable under paragraph 1529(a) of the said act, as modified by the supplementary trade agreement with Switzerland, T.D. 53832, at the rate of 45 per centum ad valorem as articles in part of braid. It was stipulated that the articles at bar are in part of braid, composed of yarns, threads, or filaments (R. 2).

A sample of the imported merchandise was admitted in evidence as plaintiff's exhibit 1. It may be described as a headpiece or headdress with a circular lobe on each end, approximately 14 or 15 inches in length and about 4 inches in width. The so-called earpieces are about 2 inches in diameter. The exhibit itself is composed of a wire frame covered with nylon tulle and has a leaflike lacy effect throughout. The wire frame is pliable and can be employed to conform to the shape of the head. It was agreed by counsel for the plaintiff that plaintiff's exhibit 1 "is worn for the purpose of embellishment in the same manner as many ornamental articles of millinery wearing apparel." There were also received in evidence certain sprays, composed of artificial flowers, leaves, or stems, which are used as bridal headdresses (defendant's illustrative exhibits A and B), reference to which will be hereinafter made in this opinion.

The only testimony offered was that introduced on behalf of the plaintiff by Mr. William Schwartz, employed by the importing company as buyer, seller, salesman, and designer. He testified that he had had some 32 years' experience in the millinery line and that, in such connection, he was familiar with artificial flowers, leaves, and forms that are used in the millinery trade. He further stated that his company handles bridal headpieces, veils, veilings, and novelties; that plaintiff's exhibit 1 is a headpiece for a bride; that it is worn with a veil attached to the back; that it is so constructed that it will cover the ears; and that such headpiece is stationary "and will not move when the veil is put on" (R. 5). Mr. Schwartz testified that he had designed the wire frame of the particular headpiece here in question, that is, the round wire with the braid around it, including the two ear circles. It appears that these wire shapes are sent abroad where the trimmings are put on.

Mr. Schwartz testified that, in designing the frame for the imported article, he did not have in mind any flower or leaf or anything of that sort, but "figured something in a leafy effect" because "it is that type of thing that is popular with the bridal trade" (R. 7). He further stated that he did not know any natural leaf which is used in a manner similar to the manner in which plaintiff's exhibit 1 is used; that, in the millinery trade, artificial flowers, such as roses, petunias, or pansies, are used, which generally carry stems with them; that the leaves that are used in millinery are not of the texture nor of the same shape as the leafy effect employed in the article at bar; that a leaf generally used in the millinery line is used in conjunction with flowers, and the leaves generally have more of a sort of a triangle shape, "with little ridges running up and down the side and top," and that they are used in conjunction with flowers themselves (R. 8–9). The record herein further discloses the following:

CHIEF JUDGE OLIVER: The leaf shaped portions of Exhibit 1, they are all white, aren't they?

THE WITNESS: That is right.

CHIEF JUDGE OLIVER: Are there any veins or stamen in the center part of the leaf?

THE WITNESS: The center part of the leaf are things like these little pearl things.

CHIEF JUDGE OLIVER: Is there anything else in there that simulates a leaf in nature, such as veins, or anything else?

THE WITNESS: No.
BY MR. MANDELL:

Q. In other words, that leaf is all a net effect, is that right?—A. That is right.

Q. It is completely covered with a net?—A. Yes, actually a nylon tulle.
[R. 9–10.]

On cross-examination, Mr. Schwartz testified that artificial leaves are used in the millinery line and that he had seen ladies' dresses trimmed with artificial leaves or flowers made of cotton, velvet, satin, and nylon (R. 11). He further stated that, generally, a bride only wears a veil during the ceremony and then detaches the veil and wears the headpiece, such as plaintiff's exhibit 1, alone. The witness, while agreeing that the article at bar has a "leaf-like effect" (R. 15), stated that it was not composed of artificial leaves, explaining that the "leaves" in plaintiff's exhibit 1 "are an artificial of an artificial leaf." (R. 16). Mr. Schwartz further stated that he did not know of any leaf in nature that any of the "semi-circular leaf shaped items" in plaintiff's exhibit 1 imitates.

Respecting defendant's illustrative exhibits A and B, plaintiff's witness testified as follows: That defendant's illustrative exhibit A is composed of artificial flowers, leaves, or stems; that he had seen such an article used as a headpiece for the millinery line, sold by milliners for both children and adult wear (R. 18–19); that defendant's illustrative exhibit B is a sample of a bridal headdress (R. 20), although not identical to the imported item (R. 22); that there are no artificial leaves whatsoever on defendant's illustrative exhibit B, but the bottom portion is made out of wax "forget-me-nots," and the rest are composed of so-called pearlized "peps" which produce a flowery effect, such as that in plaintiff's exhibit 1, but which are a very poor imitation of the true flower (R. 23–24). On further questioning, plaintiff's witness stated that he had never seen natural flowers used for the purpose of ornamentation in the same manner as plaintiff's exhibit 1 is used (R. 25).

The issue before the court is whether the involved bridal headdresses are dutiable under the modified provisions of paragraph 1518 of the tariff act as articles composed of artificial or ornamental flowers, leaves, stems, or parts thereof, composed of certain materials embraced within the provisions of said paragraph, as classified, or whether the merchandise at bar is properly classifiable under paragraph 1529 of the act, as modified, as "Hats, bonnets, and hoods * * * wholly or in chief value of rayon or other synthetic textile and wholly or in part of braids suitable for making or ornamenting hats, bonnets, or hoods * * *." Counsel for the respective parties herein stipulated that the merchandise under consideration is in part of braid, composed of yarns, threads, or filaments.

The question as to what constitutes "artificial or ornamental fruits * * * leaves, flowers, stems, or parts thereof," has been frequently passed upon by this and our appellate court. In *Mottahedeh Creations, Ltd., et al. v. United States*, 43 Cust. Ct. 9, C.D. 2095, decided July 8, 1959, the merchandise consisted of certain articles composed

of wrought iron, painted in natural colors, which consisted of potted lily plants (plaintiffs' exhibits 1 and 3), rose bush set in a cache pot (plaintiffs' exhibit 2), and so-called Espalier apple tree adorned with fruit and blossoms (plaintiffs' exhibits 4 and 5). In holding these items properly classifiable under paragraph 1518 of the act, as modified, as articles in chief value of artificial flowers, fruits, leaves, or stems, composed wholly or in chief value of "other" materials, this court, page 17, stated:

* * * simulation to the natural fruit, flower, leaf, or stem in physical characteristics and appearance, so as to cause the articles to be regarded within the common understanding as the artificial counterparts of the real products of nature, is sufficient for classification of plaintiffs' exhibits 4 and 5 under the artificial or ornamental fruit or flower provision of the tariff act, and we so hold.

The court, in the *Mottahedeh* case, *supra*, made reference to the recent opinion on the issue herein of our appellate court, as expressed in *Marshall Field & Co.* v. *United States*, 45 C.C.P.A. (Customs) 72, C.A.D. 676. In the latter case, certain merchandise invoiced as "Iron Works, Metal fruits w/leaves" and other merchandise invoiced as "Iron pictures of 4 season flowers rusty finish with dull black wooden frame" were classified as "artificial fruits" and "artificial flowers," respectively, under paragraph 1518 of the act, as modified, *supra*, and claimed properly dutiable under paragraph 397 of the act as articles or wares in chief value of base metal. The merchandise in the first class consisted of a three-dimensional, realistic representation of a stem, about 6 inches long, attached to which were four short branches, three of the latter containing leaves about 3 inches long and the fourth branch having attached thereto an object resembling a small pomegranate. The color of the whole was that of slightly rusty iron. An illustrative example of the "Iron pictures" disclosed a framed representation of simulated flower stems of roughened wire from which ran a number of branches bearing leaves and flowers somewhat like large daisies. The record in the *Marshall Field* case, *supra*, disclosed that both types of the involved merchandise were hung on walls, a factor which the appellate court deemed quite pertinent, stating, in this connection, at page 75, as follows:

* * * In common understanding natural flowers and pictures have little in common as to use or otherwise. One could as logically argue that a picture of a flower is an artificial flower.

The court, in the *Marshall Field* case, *supra*, made further reference to the holding of the court in the oft-quoted case of *Cochran Co. et al.* v. *United States*, 10 Ct. Cust. Appls. 62, T.D. 38336, involving a spray of artificial leaves on a stem, a cluster made of black straw wound into the form of berries or grapes, and a spray of leaves

bearing a rose. Commenting on the decision in the *Cochran Co.* case, the court, in the *Marshall Field* case, *supra*, at page 80, observed:

\* \* \* The court decided the issues, as it has in every other case we have reviewed, *on the basis of its own judgment* as to whether the merchandise before it was or was not *in common understanding* an artificial fruit, leaf or flower. \* \* \* [Emphasis by the court.]

After citing a number of cases involving the applicability of the artificial flower provision of the relevant tariff acts to various imported merchandise, our appellate court, in the *Marshall Field* case, *supra*, at page 81, stated:

It will be seen from the cases above mentioned that many different factors were taken into consideration in determining whether the articles in each case were artificial fruits or flowers. These factors were not limited to the two questions of closeness of simulation and suitability to the ornamental uses of real flowers referred to in the *Cochran* opinion but included others such as size, primary function, other recognized names, uses and applicable tariff act provisions, and ordinary common sense. The situation must be viewed as a whole.

\*      \*      \*      \*      \*      \*      \*

We hold, on the ample evidence before us, that the metal fruit with leaves exemplified by Exhibit 1 is not in the category of "artificial fruits," as classified, because in our judgment it is properly described as a wrought iron wall decoration using a fruit and leaf motif. We believe that the common understanding of the term "artificial fruit" does not encompass such iron objects, particularly when their overall color is that of oxidized iron so as to give the observer the distinct and immediate impression that it is a work of wrought iron, to be used where it is desired to add a touch of wrought iron to the interior décor, not where one would normally use real fruit or close imitations thereof in form and color.

The "iron pictures" exemplified by Exhibit 2 we hold are not in the category of "artificial flowers" wherein they were classified. They are a species of three-dimensional monochrome pictorial compositions mounted in frames and are obviously to be used as framed pictures are used, hanging on a wall as testified. This is not the use to which real flowers are normally put, nor the close imitations thereof which might be mistaken therefor.

In *United States* v. *Sears, Roebuck & Co.*, 11 Ct. Cust. Appls. 412, T.D. 39323, the appellate court held that certain papier-mâché candy containers in the form of apples, pears, peaches, and other fruits, crudely but appropriately colored and of natural fruit size, were not "artificial and ornamental fruits" under paragraph 347 of the Tariff Act of 1913. The issue in that case was decided "according to the common or ordinary use of the words by people in general," the court assigning as reasons for its decision concerning the articles therein involved "that their physical characteristics and appearance would not cause them in common understanding and speech to be regarded and described as artificial fruits or as appropriate and suitable to be used for those purposes of decoration or ornamentation to which natural fruits may be temporarily devoted. *For to the common understanding and in ordinary speech the articles would* \* \* \* *be con-*

*sidered and described as merely fancy boxes for exclusive use as containers of candy.*" [Italics ours.]

In *Coro, Inc.* v. *United States*, 39 C.C.P.A. (Customs) 154, C.A.D. 478, the merchandise consisted of certain costume jewelry designed to be attached to dresses, coats, and hats of women as ornaments. The item under consideration was in the form of a pin or brooch, composed of metal and glass, which, aside from the pin portion, consisted of three layers of metal in trefoil form superimposed one on another in successively smaller diameters. In the center of the outer face of the brooch, there was mounted on a short metal post a piece of glass with facets thereon like those of a round cut diamond. The portion of the brooch apart from the pin was considered to be in the form of a conventional flower. However, there was nothing in the record in the *Coro* case, *supra*, to show that the flowerlike portion of the exhibit was ever used by itself or for use in ornamental wearing apparel. In holding the involved merchandise properly classifiable as jewelry, as claimed, our appellate court, in the *Coro* case, page 157, stated:

> In our opinion, even though it may be said that the involved articles are conventionally flower-like, they are neither appropriate nor suitable for the well-known purposes of ornamentation to which artificial [that *natural* was intended is clear from the context] flowers may be temporarily devoted. They are simply costume jewelry in the form of brooches which, omitting the pin portion, may be said to look like the form of some kind of a flower. It would tax the imagination to picture such articles as being artificial flowers in accordance with common understanding.

We are of opinion that the authorities heretofore above quoted, coupled with the nature and use of the importation before us and the evidence of record, support a conclusion that the bridal headdresses here involved are not properly classifiable as articles composed of artificial or ornamental flowers, leaves, stems, or parts thereof. Plaintiff's witness in the case at bar, while conceding that exhibit 1 was composed of a "leafy effect" (R. 16), testified that it was not composed of artificial flowers. Samples are potent witnesses (*United States* v. *The Halle Bros. Co.*, 20 C.C.P.A. (Customs) 219, T.D. 45995), and an inspection of plaintiff's exhibit 1 clearly indicates, in our opinion, that the imported article does not simulate any leaf in nature, in color, in shape, in quality, in texture, or even in appearance. While the leaflike effect in the imported article is undoubtedly ornamental, it does not follow that it is necessary an article composed of an artificial leaf or flower. *Marshall Field* case, *supra*. The wire frame of the imported headdress shaped in elliptical form is covered with braid and nylon tulle or netting, and there are no "veins" or "stamen" in the center part of the leaflike portion (R. 10). To paraphrase the court in the *Coro* case, *supra*, "it would tax the imagination" to regard the imported article as one composed of artificial leaves or flowers.

The leaflike or flowerlike motif in the importation at bar is secondary to its indicated use and primary function as an article of wearing apparel. Within the common understanding, the imported merchandise would not be regarded as articles composed of artificial leaves or flowers.

Upon the basis of the record here presented and the cited authorities, we hold the involved bridal headdresses properly dutiable under paragraph 1529(a) of the Tariff Act of 1930, as modified by the supplementary trade agreement with Switzerland, T.D. 53832, at the rate of 45 per centum ad valorem, under the provisions therein for "Hats, bonnets, and hoods * * * wholly or in chief value of rayon or other synthetic textile and wholly or in part of braids suitable for making or ornamenting hats, bonnets, or hoods * * *," as claimed.

The protest is sustained.

Judgment will be rendered accordingly.