(C.D. 3154)

FRANK P. DOW CO., INC. (SPROUSE-REITZ) v. UNITED STATES

United States Customs Court, First Division

(Decided October 16, 1967)

*Lawrence & Tuttle* (*Edward N. Glad* and *George R. Tuttle* of counsel) for the plaintiff.

*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Sheila N. Ziff* and *Irving A. Mandel*, trial attorneys), for the defendant.

Before WATSON and BECKWORTH, Judges

WATSON, Judge: The merchandise in the case at bar consists of certain items invoiced as "Bead Sprays" which were assessed for duty at the rate of 50 per centum ad valorem under paragraph 1518(a) of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865 and T.D. 53877, as artificial fruits or grains, in chief value of beads.

Plaintiff contends that the involved items are properly dutiable at the rate of 27 per centum ad valorem under paragraph 1503 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, as articles in chief value of beads.

The pertinent provisions of the statutes herein involved are as follows:

Paragraph 1518(a) of the Tariff Act of 1930, as modified by T.D. 53865 and T.D. 53877:

Artificial or ornamental fruits, vegetables, grasses, grains, leaves, flowers, stems, or parts thereof:

Composed wholly or in chief value of yarns, threads, filaments, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or rayon or other synthetic textile_____ 50% ad val.

Paragraph 1503 of the Tariff Act of 1930, as modified by T.D. 54108:

Fabrics and articles not ornamented with beads, spangles, or bugles, nor embroidered, tamboured, appliqued, or scalloped, composed wholly or in chief value of beads or spangles (other than imitation pearl beads, beads in imitation of precious or semiprecious stones, and beads in chief value of synthetic resin); beads composed wholly or in chief value of synthetic resin; and beads, not otherwise provided for in paragraph 1503, Tariff Act of 1930, in imitation of precious or semiprecious stones, of all kinds and shapes, of whatever material composed:

Fabrics and articles_____ 27% ad val.

The record herein consists of the testimony of one witness called by the plaintiff, and two exhibits. Plaintiff's illustrative exhibit 1 consists of photographs portraying the merchandise under consideration (R. 11). Plaintiff's collective illustrative exhibit 2 consists of bead sprays representative of the items illustrated in plaintiff's exhibit 1 (R. 18).

Mr. Richard H. Leonard, a buyer for Sprouse-Reitz Co., purchaser of the involved merchandise, testified on behalf of the plaintiff. He stated he has been connected with that concern, which operates retail variety stores in 10 Western States, for about 11 years (R. 2–3). His duties with the firm involve examining merchandise and deciding what the firm should buy, placing orders, and seeing that the merchandise is shipped and delivered. Plaintiff's witness testified that he was familiar with the merchandise described as "Bead Sprays," having "examined the samples of these items that were originally submitted to us by our agents in Japan" (R. 3–4). Plaintiff's witness identified the involved items as follows:

Q. What is the assortment number?—A. It is 1957/219A.

Q. What is the item number?—A. Bead Spray item number 25533, 25537, 25545, 25547, 25548.

Mr. Leonard circled the items known as "Bead Sprays" on plaintiff's exhibit 1, testifying in this connection that he had taken part in preparing said exhibit in that he had given the items to the firm's photographer after they were selected for purchase by his company, the purpose of the items so photographed being to illustrate the merchandise to the company's store managers to assist them in deciding whether to order such items (R. 4–5). It appears that, while plaintiff's witness was not the only buyer for the company, he was involved in all buying of Christmas decorations from Japan and placed all the orders during that period (R. 5–6). Mr. Leonard stated, however, that he did not buy the particular assortment of items at bar, since the order covering the involved merchandise was made prior to his assuming the position of buyer with the company (R. 6–7).

Plaintiff's witness subsequently stated that he had not personally supervised the photographing of the particular assortment of items in plaintiff's exhibit 1 (R. 8) but that exhibit 1 was taken from records kept in the regular course of business and that he had custody of the record book from which the exhibit came (R. 9). He further testified that, based on such records and his familiarity with the methods used in photographing samples, the photographs in plaintiff's exhibit 1 were, "to the best of my knowledge," accurate portrayals of the merchandise under consideration (R. 10–12). The record discloses that plaintiff's witness had brought in bead sprays every year

since he has been a buyer; Mr. Leonard stating in this connection that the articles circled on exhibit 1 represented such bead sprays. He identified plaintiff's exhibit 2 as "Bead Sprays" (R. 13), stating that the said articles differ from the merchandise depicted in plaintiff's exhibit 1 only that the collective exhibit was comprised of "only one kind of bead," whereas in the items depicted in plaintiff's exhibit 1, "instead of having round beads running continuously they had a small glass bead running in between" but that "in shape and design they are identical" (R. 14). The witness further stated that the sprays in plaintiff's illustrative exhibit 1 and the sprays comprising plaintiff's collective illustrative exhibit 2 were constructed in the same manner (R. 15), that is, they consisted of "beads on a stem, joined together" (R. 13). The articles comprising plaintiff's collective illustrative exhibit 2 have been available in all colors since plaintiff's witness began ordering them, and also come in various lengths (R. 17). Mr. Leonard testified that he had seen bead sprays used in homes and public buildings (R. 18), and that he had seen them used as decorations (R. 18). He had seen them not only in the city of Portland but also in stores in California (R. 19).

On the question of the applicability of paragraph 1518 of the Tariff Act of 1930 to the merchandise here involved and in support of its claimed classification, plaintiff in its brief directs our attention to certain holdings of this and our appellate court, as follows: *Marshall Field & Co.* v. *United States*, 45 CCPA 72, C.A.D. 676; *Joseph Markovits, Inc.* v. *United States*, 45 Cust. Ct. 151, C.D. 2216; and *Alex Block & Company* v. *United States*, 53 Cust. Ct. 202, C.D. 2496.

In the *Marshall Field & Co.* case, *supra*, the court, in determining whether the merchandise there involved ("Iron works, metal fruits w/leaves" and "Iron pictures of 4 season flowers rusty finish with dull black wooden frame") was properly classifiable under paragraph 1518 of the tariff act, made reference to the oft-cited case of *Cochran Co. et al.* v. *United States*, 10 Ct. Cust. Appls. 62, T.D. 38336. In its decision, the court in *Marshall Field* case, *supra*, at page 80, stated:

The *Cochran* case does not really lay down any "rule" or "test" different from the basic rule that common understanding of the meaning of the words controls. Though more verbose, an analysis of the quoted paragraph will show that when boiled down all the Court of Customs Appeals there said was that a *man-made article is an artificial flower if it looks enough like a flower (real or imaginary) to be regarded as an artificial flower in "common understanding"*. And herein, we believe, resides the explanation of why the *Cochran* case can be and is repeatedly relied upon by both parties to a litigation; its supposed "rule" settles nothing because it begs the question. As we suggested above, the *Cochran* case leaves the decision as to any given article to be made by the court on the basis of the common meaning of the term artificial flowers, or fruits, or whatever may be involved,

which is perhaps as it should be for it is not the business of this court to rewrite the tariff act but rather to apply it in specific situations. A close look at the *Cochran* case opinion will show that all the court was doing was to say whether or not the straw objects before it were or were not artificial fruits, leaves, flowers and stems, though admittedly they looked like no real plant to the extent of deceiving anyone into thinking they were real. The court decided the issues, as it has in every other case we have reviewed, *on the basis of its own judgment as to whether the merchandise before it was or was not in common understanding* an artificial fruit, leaf or flower. Thus, on a case by case basis, the court construes and sets the limits of the statutory language by a process of inclusion and exclusion. It is by this process that we determine "common meaning," which it is our province to do and as to which we are bound by no evidence. * * * [Emphasis quoted.]

and, at page 81, the court held:

We hold, on the ample evidence before us, that the metal fruit with leaves exemplified by Exhibit 1 is not in the category of "artificial fruits," as classified, because in our judgment it is properly described as a wrought iron wall decoration using a fruit and leaf motif. We believe that the common understanding of the term "artificial fruit" does not encompass such iron objects, particularly when their overall color is that of oxidized iron so as to give the observer the distinct and immediate impression that it is a work of wrought iron, to be used where it is desired to add a touch of wrought iron to the interior décor, not where one would normally use real fruit or close imitations thereof in form and color.

The "iron pictures" exemplified by Exhibit 2 we hold are not in the category of "artificial flowers" wherein they were classified. They are a species of three-dimensional monochrome pictorial compositions mounted in frames and are obviously to be used as framed pictures are used, hanging on a wall as testified. This is not the use to which real flowers are normally put, nor the close imitations thereof which might be mistaken therefor.

In *Joseph Markovits, Inc.* v. *United States, supra,* the merchandise consisted of glass balls on chenille covered stems which were classified for duty under paragraph 1518 of the Tariff Act of 1930, as modified, as artificial fruits, not specially provided for. Plaintiff therein claimed the merchandise properly dutiable under paragraph 218(f) of the said act, as modified, at the appropriate rate as articles not specially provided for, in chief value of colored glass. There was testimony in the above case, that, after importation, the merchandise was sold by the plaintiff to manufacturers of Christmas corsages and package decorations, the record disclosing that the imported glass balls were also used with other items, such as a Santa Claus, and were worked into a cluster with silver or green lacquered leaves to make a corsage and either worn as such or used to trim packages.

This court in the *Markovits, Inc.,* case, *supra,* at page 153, stated:

The issue here for determination is whether or not the imported glass balls on chenille stems, as represented by plaintiff's collective illus-

trative exhibit 1, are artificial fruits. The test for classification of merchandise in cases of this character has been stated to be whether the involved article may be regarded as an artificial flower "in common understanding." In the case of *Mottahedeh Creations, Ltd., et al.* v. *United States*, 43 Cust. Ct. 9, C.D. 2095, this court in resolving the issue such as here presented, at page 16, referred to the decision of our appellate court in *Marshall Field & Co.* v. *United States*, 45 C.C.P.A. (Customs) 72, C.A.D. 676, and stated as follows:

> * * * "A man-made article is an artificial flower if it looks enough like a flower (real or imaginary) to be regarded as an artificial flower 'in common understanding'." *Marshall Field & Co.* case, *supra*. * * *

The court in the *Joseph Markovitz* case (C.D. 2216), *supra*, after citing the well-known rule that samples are potent witnesses (*United States* v. *The Halle Bros. Co.*, 20 CCPA 219, T.D. 45995), stated that a visual inspection of the representative sample persuaded it that the imported merchandise did not simulate any natural fruit either in appearance or in physical characteristics so as to be regarded as artificial fruits within the common understanding. The court further observed that the uses of the involved merchandise either in making up a Christmas corsage as a Christmas decoration or to decorate packages as a ribbon might be used on a package for decorative purposes are not those uses for which natural fruits are normally used nor are they the uses of close imitations of natural fruits. The court, accordingly, held the involved merchandise properly classifiable under paragraph 218(f) of the tariff act, as modified, as articles not specially provided for, in chief value of colored glass, valued not over $1.66⅔ each, as claimed. In this connection, the court therein, page 155 stated:

> * * * The mere fact that an article can be used for ornamental purposes does not necessarily make it an artificial flower or fruit, even though it has some other flower or fruitlike characteristics. *Marshall Field & Co.* case, *supra*. The glass balls here involved do not, in our opinion, even crudely resemble any natural fruit. We cannot leave their acceptance as artificial fruit to mere speculation. Our appellate court, in *Coro, Inc.* v. *United States*, 39 C.C.P.A. (Customs) 154, C.A.D. 478, in resolving the proper classification of certain costume jewelry in the form of brooches, designed to be attached to women's wearing apparel as ornaments, stated:

> * * * It would tax the imagination to picture such articles as being artificial flowers in accordance with common understanding.

In the *Alex Block* case, *supra*, certain merchandise designated as a "Silk Ball," which the record showed was sold to department stores, chain stores, and variety stores for use as a decoration on Christmas trees, was held properly dutiable under paragraph 1312 of the Tariff Act of 1930, as modified, as manufactures of rayon filaments, fibers, yarns, or threads, not specially provided for, as claimed, rather than

dutiable under paragraph 1518(a) of said act, as modified, as artificial or ornamental fruits, composed wholly or in chief value of yarns, threads, and filaments, as classified. The representative sample in evidence consisted of a round object in the shape of a ball, about 2 inches in diameter, having on top six leaves with somewhat berry-like stems. The court in the *Alex Block* case, *supra*, in holding the merchandise properly dutiable as claimed, at page 204, stated:

In viewing the sample of the merchandise in evidence, plaintiff's exhibit 1, and applying to it the test of "common understanding," as composed of the various items referred to by the *Marshall Field* case, *supra*, we are of opinion that the merchandise does not consist of artificial fruits as that term is intended to be understood by the Tariff Act of 1930.

Applying the test of "common understanding," as set forth in the above-cited case, to the merchandise in the case at bar, we are of opinion that the importation here involved is not properly classifiable under the provision in paragraph 1518 of the tariff act for "Artificial or ornamental fruits, * * * grains, * * * composed wholly or in chief value of * * * beads, * * *." Examination of the representative sample, plaintiff's collective illustrative exhibit 2, fails to persuade us that these "Bead Sprays" are properly dutiable as classified. Defendant contends that the "elongated structures" that comprise plaintiff's exhibit 2 are artificial grains in that they resemble natural wheat sufficiently to be regarded as an artificial grain in common understanding. We do not so regard the involved articles. In appearance, they consist of small beads strung on a stem. While it may be true that their size may indicate a "fruitlike characteristic," such as that of berries or grapes, in our view they do not present the image of artificial grains. Certainly, it would take some stretch of the imagination to so regard them. As was stated in the case of *Coro, Inc.* v. *United States* (costume jewelry in the form of a pin or brooch, in the form of a conventional flower), 39 CCPA 154, C.A.D. 478:

* * * It would tax the imagination to picture such articles as being artificial flowers in accordance with common understanding.

The same reasoning is applicable to the involved items in the case at bar.

Further, while the record discloses that the "Bead Sprays" are used for decorative purposes, that factor alone, does not render them artificial flowers or fruit. *Marshall Field & Co.*, *supra*.

The involved articles are in chief value of "beads." However, paragraph 1503 of the tariff act, as modified, under which plaintiff claims the merchandise properly dutiable, while providing for articles wholly or in chief value of beads, excludes from classification within the para-

graph fabrics and articles wholly or in chief value of imitation pearl beads, fabrics and articles wholly or in chief value of beads in imitation of precious or semiprecious stones, and fabrics and articles, wholly or in chief value of beads in chief value of synthetic resin. The defendant in its brief specifically contends that the plaintiff in this case has failed to establish that the beads that form a part of the merchandise at bar are not "composed wholly or in chief value of synthetic resin."

It is well established that in a classification case the plaintiff has the twofold burden not only of establishing that the collector's classification was erroneous but also of establishing its own claim. *Joseph E. Seagram & Sons, Inc.* v. *United States*, 30 CCPA 150, C.A.D. 227.

In *Calvaire, Inc.* v. *United States*, 64 Treas. Dec. 538, T.D. 46741, the merchandise in question consisted of a lady's handbag or purse, with a brass frame and clasp and a white silk lining. The outside was composed of a network of imitation pearl beads on strings. The merchandise was assessed under paragraph 1527(c)(2) of the Tariff Act of 1930 at the relevant rate for "articles * * * designed to be worn on apparel or carried on or about or attached to the person." Plaintiff claimed chiefly that the merchandise was properly dutiable at the pertinent rate under paragraph 218(f) of said act as an article wholly or in chief value of glass. The said merchandise was held properly dutiable under said claim. Plaintiff had also claimed in the protest that the merchandise was dutiable under paragraph 1503 of the tariff act. In disposing of this claim, the court, in the *Calvaire, Inc.*, case, *supra*, at pages 541–542, stated:

> In the bead paragraph of the present act (paragraph 1503) there is a provision for "articles not ornamented with beads * * * composed wholly or in chief value of beads"; but the provision continues "(*other than* imitation pearl beads * * *)", thereby indicating that articles composed wholly or in chief value of imitation pearl beads are excluded from the provision for articles in chief value of beads. The only other provision covering such beads as are contained in this bag is the provision for "hollow or filled imitation pearl beads", heretofore quoted, which according to the proviso heretofore set out may be "strung or loose, mounted or unmounted." There is nothing to indicate that an *article* "composed in chief value of hollow imitation pearl beads, strung on strings and not set", such as this bag, was intended by Congress to fall within this provision. On the contrary, it seems to us that Congress by the very wording of the third clause of paragraph 1503 intended to exclude *articles* in chief value of imitation pearl beads from the operation of paragraph 1503. [Emphasis quoted.]

The record in this case is lacking in any evidence regarding the component materials of which these "Bead Sprays" are composed. No testimony was adduced on the part of the plaintiff to establish the component materials of which the beads are comprised, nor was any evidence introduced as to the relative values of the items making up

the merchandise. The exhibits likewise fail to establish the component materials of the beads in question. The plaintiff in this case has failed to establish that the "beads" in the involved items are not beads "in chief value of synthetic resin." (Paragraph 1503.) Accordingly, plaintiff in this case has failed in its burden of proof.

For the reasons heretofore stated, the protest in this case is overruled, without, however, affirming the classification made by the collector.

Judgment will issue accordingly.