CLAFLIN et al. v. ROBERTSON, Collector.

(Circuit Court, S. D. New York. December 19, 1888.)

CUSTOMS DUTIES—STATUTES—TRADE NAMES.

> Where an importer seeks by reason of commercial designation to withdraw certain goods from the operation of terms of general description in a tariff act, which would in ordinary speech include them, he must show by a fair preponderance of evidence, not only that the goods were at the time of the passage of the act known in trade and commerce by various trade names, but also that the terms of general description then had in the parlance of trade and commerce a restricted meaning, which restricted meaning excluded the goods in question.

At Law.

The plaintiffs, H. B. Claflin and others, in 1884 and 1885 imported into the port of New York various importations of cotton goods consisting of articles shown on the trial to be known in trade and commerce in this country under the names of "mosquito net, Hamburg net, Nottingham curtain net, taped and not taped, Nottingham pillow shams, Nottingham tidies, and Nottingham bed-spreads." They were classified for duty by the collector of customs at 40 per cent. *ad valorem* as cotton laces or embroideries, under Schedule I of the act of March 3, 1883. The plaintiffs, on the other hand, claimed that the proper rate was but 35 per cent., under the clause of the same schedule imposing the latter rate on "manufactures of cotton not specially enumerated or provided for in the act," and brought this action to recover the difference.

*Edward Hartley* and *Charles Curie*, for plaintiffs.

*Stephen A. Walker*, U. S. Atty., and *Macgrane Coxe*, Asst. U. S. Atty., for defendant.

LACOMBE, J.; (*charging jury.*)  One of the witnesses for the plaintiff described, and correctly described, each one of these various articles as "a fabric of fine threads of cotton, interwoven in a net, and sometimes ornamented with figures." The evidence of your own eyes, without the testimony of any experts, of course would show you the same thing. Turning to the dictionary we find that the word "lace" is thus defined: "A fabric of fine threads of linen, silk, or cotton, interwoven in a net, and often ornamented with figures." Had we only the dictionary to refer to, therefore, the articles before us would come within the classification of "cotton laces" or "laces made of cotton." We are not, however, in these tariff acts, confined to the dictionary in determining the meaning of the words used by congress. The tariff laws impose duties upon importations of goods. Their framers use language that importers would understand; and where things have names, among importers, which they have acquired by usage, different from what would be the ordinary names, (that is, as understood by ordinary individuals,) we are to take the trade names,—that is, the names by which importers know them. In order to bring this case under the application of that

rule, the plaintiff has introduced testimony to the effect that these articles are bought and sold and are known in the trade and commerce of this country only by certain names, which I need not repeat to you, as you have heard the testimony. He has further examined his witnesses in order to bring out from them the fact that they are never bought, sold, or spoken of in the trade and commerce of this country as cotton laces. So far as the testimony is to the effect that they are always bought and sold as "Hamburg net" or "bed-spreads," or "Nottingham .curtains," or what not, I do not know that there is much conflict of evidence, if any, between the witnesses. But you will, of course, understand that the plaintiff has to cover with his trade evidence both descriptions of words,—the words under which they are actually bought and sold, and also the word or words under which he claims that they are not known. To illustrate: "Linen," in the dictionary, is described as a "thread or cloth made of flax or hemp." Now, from linen cloth are made hemstitch pocket handkerchiefs. Testimony merely to the effect that these handkerchiefs were never bought and sold in the trade by any other name than "hemstitch pocket handkerchiefs," and that they were never known in the trade as "linen," would not take these goods out of the class of linens, unless it was also shown that the word "linen" had been distorted from its actual meaning, and was, by the trade, used solely in a restricted sense, as covering only goods other than handkerchiefs. So, in the case before us, in order to take this class of goods which, as "a fabric of fine threads of cotton, interwoven in a net, and often ornamented with figures," is within the dictionary meaning of the words "cotton laces," out of that class, the plaintiff must satisfy you by a fair preponderance of proof that at the time this act was passed, (March 3, 1883,) and prior thereto, the words "cotton laces" had in the trade and commerce of this country (that is, in the trade and commerce carried on between large dealers and importers,—in such transactions as those in which the parties to both sides of the transaction were in the business) a peculiar or technical trade meaning, and that such technical trade meaning excluded these articles. If he satisfies you of that, he is entitled to recover; if he does not so satisfy you, then your verdict should be for the defendant.

The jury found for the plaintiff on the mosquito and Hamburg net, and for the defendant on the remainder of the importation.