(C. D. 740)

B. R. Anderson & Co. *v.* United States

United States Customs Court, First Division

(Decided February 25, 1943)

*Lawrence & Tuttle* (*George R. Tuttle* and *Charles F. Lawrence* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Francis X. O'Donnell, Jr.,* special attorney), for the defendant.

Before Oliver, Walker, and Cole, Judges

Cole, Judge: In *A. Magnano* v. *United States,* 61 Treas. Dec. 1019, T. D. 45672, the record in which case was, without objection, admitted in evidence herein—this court found the evidence sufficient to support the claim of the importer that a commercial designation removed the merchandise in question from the classification applied by the collector under paragraph 717 (c) of the Tariff Act of 1930, at 2½ cents per pound, as codfish, dried and unsalted. Although the merchandise in that case, known as stockfish, was dried and unsalted codfish according to the overwhelming weight of the evidence, it was ordered dutiable at 1¼ cents per pound under the same paragraph, 717 (c), which, in full, reads as follows:

Fish, dried and unsalted: Cod, haddock, hake, pollock, and cusk, 2½ cents per pound; other fish, 1¼ cents per pound.

As we now see the situation, if the ruling under the *Magnano* case, *supra,* is permitted to stand as a precedent in interpreting section

717 (c), it will be tantamount to rendering practically nugatory its provision to which the rate of 2½ cents per pound has application. Such a conclusion would have the effect of attributing to Congress the use of language for no purpose, which is contrary to all principles controlling statutory construction. In *Bernier* v. *Bernier*, 147 U. S. 242, the court said (p. 246):

\* \* \* it is a general rule, without exception, in construing statutes, 'that effect must be given to all their provisions if such a construction is consistent with the general purposes of the act and the provisions are not necessarily conflicting. All acts of the legislature should be so construed, if practicable, that one section will not defeat or destroy another, but explain and support it.

With every respect for the able and painstaking discussion of the facts and testimony in the *Magnano* case, we are in effect reversing it herein.

The merchandise in this suit, invoiced as "Stock Fish," is similar to that which was before the court in the *Magnano* case, *supra*. It was exported from Yokohama, Japan, and imported at the port of Seattle, Wash.

The record includes the testimony of one witness, supplemented by. the proceedings in the *Magnano* case.

The plaintiff has contented himself, as in the incorporated litigation, with the position that the sole issue is one of commercial designation. There is apparently no dispute in the testimony or in plaintiff's brief that the merchandise in question is dried and unsalted codfish, but because it was known in the trade and commerce of the United States, at the time of enactment of the Tariff Act of 1930, as stockfish, that status, following the plaintiff's contention, should control its tariff classification regardless of the intention of Congress in writing, as it did, into the Tariff Act of 1930, language which clearly includes the product before us. The testimony does not support this position.

In the *Magnano* case, *supra*, the plaintiff therein, Antonio Magnano, testified as the principal witness in his own behalf, and later as the only witness for the plaintiff in the instant case. His testimony has sufficient probative value to warrant quotation therefrom. In the present case, he testified in part as follows:

X Q. In your experience from 1903, to date, have you dealt in any kind of cod fish which was dried and unsalted, other than stock fish?—A. Yes, we have had some cod fish coming from Newfoundland.

X Q. Was that dried?—A. Dried and salted.

X Q. I am talking about cod fish that was dried and unsalted?—A. No, just only stock fish.

X Q. That is the only dried and unsalted cod fish that you have dealt in throughout your entire experience?—A. Yes.

X Q. In other words so far as your experience is concerned there has been no other dried and unsalted cod fish than stock fish?—A. No, not as far as I know. I don't think so.

In the earlier case, the same witness in his direct and cross-examination left the impression that merchandise which he had known in his business as dried and unsalted codfish was different from that which was known as stockfish, but this confusion in his testimony was clearly erased, for in recross-examination he left no doubt as to his knowledge of the product before the court.. The summation of his testimony which we regard as very important is as follows:

R. X Q. Please refer to Exhibit 1 (the product in question). Are you familiar with it?—A. Yes, sir.

R. X Q. Is Exhibit 1 salted?—A. Unsalted.

R. X Q. Exhibit 1 is unsalted?—A. Yes, sir.

R. X Q. Is Exhibit 1 dried?—A. It is dried.

R. X Q. Is Exhibit 1 cod fish?—A. I believe it is cod fish.

Three additional witnesses also testified in the previous case. All of them stated they had had many years' experience in buying and selling fish, including the commodity in question. Their testimony is corroborative of that of the plaintiff with respect to the trade dealing in this product as stockfish. One of the witnesses stated that in Norway this fish is known as "torsk."

The testimony, with but slight variation, is conclusive on the proposition that dried and unsalted codfish was known, and bought and sold, at the time of passage of the Tariff Act of 1930, as stockfish. Since, therefore, plaintiff admits that he knows of no kind of dried and unsalted codfish, which was sold under any other designation, it is reasonable to assume that the intention of Congress in enacting paragraph 717 (c) was to include stockfish within the descriptive language thereof. Under the circumstances, the provision for dried and unsalted codfish would cover absolutely nothing if it were held not to cover stockfish.

There is further support for this conclusion in the common, ordinary, meaning of the word "stockfish," which is set forth in leading dictionary authorities as follows:

Webster's New International Dictionary.

stockfish, n. salted and dried fish. esp. codfish, hake, ling, and torsk; also, codfish dried without being salted. [Italics ours.]

Century Dictionary.

stockfish, n. Certain gadoid fish which are cured by splitting and drying hard without salt, as cod, ling, hake, haddock, torsk, or cusk.

The court, in the Magnano case, found that the testimony therein was sufficient to establish a case on commercial designation, and accordingly sustained the plaintiff's contention. We cannot agree with that conclusion here. To do so would violate well-settled rules governing proof of commercial designation as laid down in a long line of decisions on the subject.

In the case of Neuman & Schwiers Co., Inc. v. United States, 24 C. C. P. A. 127, T. D. 48606 (decided October 26, 1936), the Court of

Customs and Patent Appeals set forth very succinctly the rule of commercial designation, as follows:

\*     \*     \*     \*     \*     \*     \*     \*

The Supreme Court,  \*   \*   \*  as in the noted case of *Two Hundred Chests of Tea,* 9 Wheat. 428, recognized that customs laws were particularly adapted for use by merchants, and that it might well be that commodities which were well known among those who were engaged in the trade, under a certain designation might not be so known, by those who were not engaged in trade; that the Congress was to be understood as speaking in terms of the trade; and that if an article, although not commonly known as designated by the law, was uniformly, definitely, and generally known by that designation in the trade and commerce of the country, it should be included within the statutory term. This rule has been carried down through the years, continuously.

\*     \*     \*     \*     \*     \*     \*

In cases involving commercial designation proof in relation thereto must be directed to the precise statutory language or designation involved (*United States* v. *Armand Schwab & Co., Inc., et al.,* 30 C. C. P. A.72, C. A. D. 218 (decided November 2, 1942). Moreover, it must be shown that the statutory phrase or term under consideration had a definite, uniform, and general meaning in the trade and commerce of the United States, as of the time of enactment of the tariff act, which was different from the ordinary common meaning. That proof must then be followed by competent evidence establishing what such commercial meaning was. (*Jas. Akeroyd & Co. et al.* v. *United States,* 15 Ct. Cust. Appls. 440, T. D. 42641.)

One of the earliest expressions by any court on this subject is found in the case of *Claflin* v. *Robertson,* 38 Fed. 92, decided as early as December 19, 1888, by the Circuit Court of the Southern District of New York. In that case, the learned judge, with clarity and soundness, charged the jury in this interesting, proper language:

\*   \*   \*. But you will, of course, understand that the plaintiff has to cover with his trade evidence both descriptions of words—the words under which they are actually bought and sold, and also the word or words under which he claims that they are not known. To illustrate: "Linen," in the dictionary, is described as a "thread or cloth made of flax or hemp." Now, from linen cloth are made hem-stitch pocket handkerchiefs. Testimony merely to the effect that these handkerchiefs were never bought and sold in the trade by any other name than "hem-stitch pocket handkerchiefs," and that they were never known in the trade as "linen," would not take these goods out of the class of linens, unless it was also shown that the word "linen" had been distorted from its actual meaning, and was, by the trade, used solely in a restricted sense, as covering only goods other than handkerchiefs. \*   \*   \*.

See *Loewenthal* v. *United States,* 2 Ct. Cust. Appls. 43, T. D. 31592.

Plaintiff has not established a case on commercial designation under the principles enunciated in the cited authorities. No attempt was made to show a commercial meaning different from the common meaning of the statutory provision for "Fish, dried and unsalted: Cod," under which the merchandise in question was classified. The proof offered by plaintiff was directed toward establishing that this

fish is commercially known as stockfish—a term not used in the statute. Such fact, however, does not affect the tariff classification of merchandise, where, as in the present case, the imported commodity falls within the common meaning of the tariff provision under which it was classified. (*United States* v. *Wilfred Schade & Co.*, 16 Ct. Cust. Appls. 366, T. D. 43092).

This finding clearly differentiates the present attitude of the court regarding imported stockfish from the decision rendered in the *Magnano* case, *supra*. In that case, the court did not apply, as should have been done, the principles here enunciated about which there can be no dispute.

The protest is overruled and the decision of the collector is affirmed. Judgment will be rendered accordingly.