37

(C. D. 827)

P. Silverman & Son v. United States

United States Customs Court, First Division

(Decided February 2, 1944)

Henry L. Ziegel for the plaintiff.
Paul P. Rao, Assistant Attorney General (Daniel I. Auster, special attorney), for the defendant.

Before Oliver, Walker, and Cole, Judges

Cole, Judge: Byproducts of wool, including different kinds of wool waste, have been the subject of much customs litigation, the last expression being P. Silverman & Son v. United States, 27 C. C. P. A. 324, C. A. D. 107. In that case the court not only reviewed a line of decisions involving different issues relating to the tariff classification of wastes composed of wool, but also discussed very thoroughly the legislative history of the provisions for wool wastes in paragraph 1105 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001, par. 1105), emphasizing that "in all the history of our customs legislation no single article of importation has been given more careful consideration by the various Congresses than has wool and its byproducts." In the reference to legislative history, excerpts from publications furnished Congress by the Tariff Commission prior to enactment of the law were set forth, the court concluding from such information "that Congress, in preparing the wool-waste provision, was only concerned about wastes of wool which would influence and affect the sale and use of wool," and "that such wastes as fell within the paragraph were those only which were used in remanufacture and which were competitive with wool."

Whether or not the merchandise now before us is used in the remanufacture of and is competitive with wool, and therefore properly

classifiable according to the construction applied in the *Silverman* case, *supra*, is a question of preliminary and controlling importance in a case such as this, for plaintiff's brief describes the merchandise here involved (which we accept as accurate) as follows:

Old paper-mill felts are a discarded article of the paper-making industry. They represent felts which have outlived their usefulness in the manufacture of paper, and *have no further commercial value except for the recovery of their component wool fibers by being processed to a fibrous condition known as wool shoddy. Their chief use, after being discarded by paper mills, is in the manufacture of wool shoddy.* These felts are shredded to reduce them to fiber form and then carded or garnetted so as to produce a mass of wool fibers suitable for use in the spinning of yarn to be made into cloth. [Italics ours.]

There can be little doubt from the foregoing that the admitted competitive character of the imported product brings it within the scope of the tariff provision for "wool waste, not specially provided for," as determined in the *Silverman* case, *supra*. Likewise, there can be little doubt, from the following examination of the record, that such classification should apply.

The discarded paper-mill felts in question were exported from Montreal, Canada, and entered at the port of Portland, Maine. The appraiser, whose advisory classification of the merchandise as a wool waste, not specially provided for, dutiable at 14 cents per pound, under paragraph 1105, *supra*, as amended by the trade agreement with the United Kingdom, T. D. 49753, was accepted by the collector, testified, as defendant's witness, that his action was based on the *Silverman* case, *supra*, and the order of the Commissioner of Customs, published July 14, 1941, in T. D. 50428, which order directed that—

*Paper-mill felts*, old but capable of being used after shredding in making clothing, are properly dutiable as a wool waste, not specially provided for, at the rate of 14 cents per pound under paragraph 1105, Tariff Act of 1930, as modified pursuant to the British Trade Agreement, rather than under the provision for "wool rags" in paragraph 1105 of the tariff act. As this ruling will result in the assessment of duty on such merchandise at a rate higher than that heretofore assessed under a uniform practice, it should be applied only to such merchandise entered for consumption or withdrawn from warehouse for consumption after 30 days after this abstract is published in the weekly TREASURY DECISIONS. * * *.

Several claims are made in the protest, the principal one being for classification as wool rags dutiable at 9 cents per pound, either directly under said amended paragraph 1105 or by similitude under the provisions of paragraph 1559 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001, par. 1559). It is also contended that the merchandise is properly dutiable at 7½ per centum ad valorem as waste, not specially provided for, under paragraph 1555 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. §1001, par. 1555), as amended by the trade agreements with Canada and the United Kingdom, published in T. D. 49752 and T. D. 49753, respectively. Alternative claims are made for classification under paragraph 1558 of the Tariff Act of 1930 (19 U. S. C.

1940 ed. §1001, par. 1558) as nonenumerated merchandise, dutiable either at 10 per centum ad valorem as being unmanufactured or at 20 per centum ad valorem as a manufactured article. The respective paragraphs, so far as pertinent, read as follows:

PAR. 1105. (a) [19 U. S. C. 1940 ed. §1001, par. 1105 (a)] * * *; wool rags, 18 cents per pound; * * * [Modified by trade agreement with the United Kingdom, T. D. 49753, to 9 cents per pound.]

PAR. 1555. [19 U. S. C. 1940 ed. §1001, par. 1555] Waste, not specially provided for, 10 per centum ad valorem. [Modified by the said trade agreement to 7½% ad valorem.]

PAR. 1558. [19 U. S. C. 1940 ed. §1001, par. 1558] That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

PAR. 1559. [19 U. S. C. 1940 ed. §1001, par. 1559] That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; * * *.

In support of their contention plaintiff presents the testimony of seven witnesses, all experienced men connected with firms located in Maine, New Hampshire, or Massachusetts and engaged in some phase of the wool industry, either as dealers in rags and wool wastes or as manufacturers of wool shoddy. Their testimony is uncontradicted and largely cumulative. It is not deemed necessary, therefore, to outline in detail the evidence of each. Their statements describing the paper-mill felts in question and the use thereof cannot be summarized more accurately than has been done in the brief of counsel for the importers, and as hereinabove set forth. The proof discloses that conversion of the imported merchandise into wool shoddy involves cutting the old paper-mill felts to size, preferably "12 inches wide and from two to three feet long," for feeding into a rag picker, and allowing the desired pieces to soak in oil for 24 hours before shredding and carding. All the witnesses agreed that the resulting wool shoddy is competitive with wool in the manufacture of clothing.

In the reply brief of counsel for plaintiff, it is conceded that "the instant merchandise is a 'waste' of the paper-making industry, and is composed wholly of 'wool,'" but it is contended that the commodity "is not known or regarded as wool waste." The claim is based on the premise that there are two distinct categories recognized in the wool industry, i. e., wool wastes and wool-waste material. It is toward this end that much of the testimony is directed. All of the witnesses admitted knowledge of such a distinction: wool waste being confined, as stated by the witness Brandy, whose expression embodies the substance of the others, to "fibrous waste, * * * accumulated during

the processes of carbonizing and carding, spinning, combing, until it gets to either a loom for weaving or a knitting machine for knitting, or a machine for felting"; and wool-waste material consisting of woven wool fabrics unfit for their original purpose and used for conversion into shoddy. Further testimony of each witness is consistent to the effect that the discarded paper-mill felts in question are wool rags, one of the groups included in the general classification, wool-waste material. The oral testimony was illustrated by several exhibits offered by plaintiff, some being fibrous forms of wool waste and others discarded woven wool products, all of which were identified by the witnesses according to the distinction set up by them.

The views expressed, however, can be accepted merely as the witnesses' personal opinions. They do not possess the force and effect necessary to establish a case on commercial designation, as set forth in our recent decision (not appealed) in *B. R. Anderson & Co.* v. *United States*, 10 Cust. Ct. 148, C. D. 740, wherein we held:

> In cases involving commercial designation proof in relation thereto must be directed to the precise statutory language or designation involved (*United States* v. *Armand Schwab & Co., Inc., et al.*, 30 C. C. P. A. 72, C. A. D. 218). Moreover, it must be shown that the statutory phrase or term under consideration had a definite, uniform, and general meaning in the trade and commerce of the United States, as of the time of enactment of the tariff act, which was different from the ordinary common meaning. That proof must then be followed by competent evidence establishing what such commercial meaning was. (*Jas. Akeroyd & Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 440, T. D. 42641.)

It therefore follows that our consideration of the tariff term "rag" must be confined to its common meaning. Funk & Wagnalls New Standard Dictionary supplies the following definition, with which there can certainly be no disagreement: "A fragment of cloth torn or partly torn from its original connection; especially, a worn, frayed, or torn bit of a garment; hence, figuratively, a fragment, small amount, or semblance of anything; as, linen *rags*."

The record shows that the present merchandise varies in size, plaintiff testifying that "the largest sizes might run anywhere from 15 to 18 feet in width and as much as 50 to 75 feet in length." The only evidence before us indicating sizes of smaller articles is the testimony of the customs official who appraised the shipment in question. When shown samples of the instant merchandise, exhibit 31 (9″ x 14″), collective exhibit 33 (6″ x 6″ and 3″ x 3″), and exhibit 34 (8½″ x 36″), the appraiser testified that none was representative of its imported condition, all having been cut from discarded paper-mill felts of the size of exhibit 30, approximately 10 feet long and 4 feet wide. Certainly, none of the recognized sizes of the present merchandise conforms to such "fragments" as the dictionary definition contemplates, and in the absence of proof establishing dimensions of smaller pieces,

the claim for classification as wool rags, under amended paragraph 1105, *supra*, must be rejected.

Classification by similitude, also alleged by plaintiff, is applicable only to nonenumerated merchandise (*Corporacion Argentina de Productores de Carnes* v. *United States*, 29 C. C. P. A. 288, C. A. D. 204) but any provision therefor cannot be invoked until it is determined that the merchandise under consideration is not included within any of the enumerated classifications of the tariff act (*General Electric Co.* v. *United States*, 4 Ct. Cust. Appls. 398, T. D. 33839). It is therefore necessary to consider, first, whether the commodity in question is waste, either wool waste, as classified, or waste, not specially provided for, as claimed. If it is either, then, under the cited authorities, the claims under paragraphs 1558 and 1559, *supra*, become wholly untenable.

Plaintiff's contention, limiting wool waste to "any fiber waste including threads or yarns thrown off in the initial processing of virgin wool into cloth," is not in line with the interpretation of the term "waste," as enunciated in *Harley Co.* v. *United States* (14 Ct. Cust. Appls. 112; T. D. 41644)—a case involving "Rags of cotton and of wool and silk"—as follows:

In the tariff sense, waste is a term which includes manufactured articles which have become useless for the original purpose for which they were made and fit only for remanufacture into something else. It also includes refuse, surplus, and useless stuff resulting from manufacture or from manufacturing processes and commercially unfit, without remanufacture, for the purposes for which the original material was suitable and from which material such refuse, surplus, or unsought residuum was derived. * * * T. D. 33376; *Willets* v. *United States*, 11 Ct. Cust. Appls. 499, 500, 501; *Schlesinger* v. *Beard*, 120 U. S. 264; *Seeberger* v. *Castro*, 153 U. S. 32; *Patton* v. *United States*, 159 U. S. 500, 505, 509; *Latimer* v. *United States*, 223 U. S. 501–503.

Clearly, the above pronouncement includes the old paper-mill felts in question as "manufactured articles which have become useless for the original purpose for which they were made and fit only for remanufacture into something else." Since it is conceded their only use is for conversion into shoddy to be ultimately employed in the manufacture of clothing, they are, following the reasoning adopted in the *Silverman* case, *supra*, wool waste, not specially provided for, as contemplated by amended paragraph 1105, *supra*, and dutiable as assessed by the collector.

There is no basis for the claim, so strongly stressed by plaintiff, that the classification as wool-waste material for the instant merchandise should apply. All of the decisions cited to support such claim were rendered prior to promulgation of the *Silverman* case, *supra*, and are distinguishable from the present issue. The equal tariff treatment accorded the provisions for "wool waste, not specially

provided for," and "shoddy" (both subject to the rate of 14 cents per pound) in said amended paragraph 1105, lends much emphasis to the construction invoked in the *Silverman* case, *supra*, manifesting a congressional intent to apply such dutiable status to merchandise used to replace or be competitive with wool.

It is argued by plaintiff's counsel that the *Silverman* case, *supra*, is not conclusive of the present issue because the question of classification as wool rags was not before the appellate court there, as it is here. As a matter of fact, the merchandise there involved had been classified as wool rags, but this court in its decision reported as Abstract 41031 (2 Cust. Ct. 655) found that the articles, referred to as "worn-out dryer felts known as Palmer or sanforizing blankets" and consisting of "pieces varying from 3 feet to 25 feet in width, and from 3 feet to 35 in length," were not wool rags, and that conclusion was accepted by both parties. Hence, the limited issue, relating solely to the particular kind of waste in question, when the case was appealed.

The doctrine of long administrative practice, sought to be invoked by plaintiff because prior to the decision in the *Silverman* case, *supra*, a uniform practice in accordance with plaintiff's contention prevailed, has no application. The *Silverman* case was decided on March 4, 1940, and the order of the Commissioner of Customs (T. D. 50428) *supra*, was issued on July 14, 1941. But it was not until more than 1 year thereafter, on August 15, 1942, that the shipment in question was exported, so plaintiff had ample notice, at the time of the present importation, regarding the attitude of customs officials with respect to the tariff classification of discarded paper-mill felts.

The protest is overruled and the decision of the collector is affirmed. Judgment will be rendered accordingly.