(C.D. 2762)

HOYT, SHEPSTON & SCIARONI
IMPERIAL RUG MILLS, INC. } v. UNITED STATES

## United States Customs Court, First Division

(Decided September 12, 1966)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.

*John W. Douglas*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before OLIVER and NICHOLS, Judges, and WILSON, Senior Judge

WILSON, Senior Judge: The merchandise under protest consists of 70 bales of "Used Wool Paper Makers Felt"[1] invoiced in several series according to color.

The collector classified the importations as "Wool Waste" under paragraph 1105(a) of the Tariff Act of 1930, as modified by Presidential proclamation, T.D. 52739, and assessed duty at 9 cents per pound. The Government's brief at page 1 states that:

\* \* \* It is claimed by the Government that the classification of the Collector was intended to embrace the appellation "wool rags" but as such was technically incorrect. Therefore, while the classification may not be sustained the protest should nevertheless be overruled and the merchandise held to be properly classifiable as wool rags under paragraph 1105(a) of the same Act, as modified by T.D. 49753, and assessed with duty at the same rate, namely 9 cents per pound, pursuant to the holding in the case of *P. Silverman & Son* v. *United States*, 15 Cust. Ct. 303, Abs. 50611 \* \* \*.

The foregoing statement in defendant's brief raises the claim therein set forth for the first time in this proceeding. No such claim is found either in the official papers or the stenographer's minutes.

Plaintiffs contend that the merchandise is properly subject to duty at 4 per centum ad valorem as "waste, not specially provided for," under paragraph 1555 of the Tariff Act of 1930, as modified by said T.D. 52739.

As modified, the relevant portions of the paragraphs of said act involved are:

As classified: Paragraph 1105, as modified by T.D. 52739:

Wool wastes not specially provided for_____ 9¢ per lb.

As claimed in defendant's brief: Paragraph 1105, as modified by the trade agreement with the United Kingdom, T.D. 49753:

Wool rags_____ 9¢ per lb.

As claimed by plaintiff: Paragraph 1555, as modified by said T.D. 52739:

Waste, not specially provided for_____ 4% ad val.

---

[1] To avoid repeated use of the quoted words, the imported merchandise will be referred to merely as "felt" or "felts."

Plaintiffs called one witness, C. R. Friend, and offered seven exhibits. The testimony and exhibits will be referred to hereinafter as deemed necessary. The defendant offered no evidence.

Mr. Friend testified in substance that he has been the vice president and general manager of Imperial Rug Mills, Inc., the plaintiff-consignee, for about 8 years; that the firm has been in business since 1951; that they manufacture hand-woven broadloom and braided carpets and rugs from papermill felts only. He administers overall sales through distributors throughout the United States, and handles direct purchases of raw material for the manufacturing process. The firm has been importing these felts for about 3½ years.

He further testified that he is familiar with the merchandise here involved because he handled its purchase. He produced a sample of the item invoiced as series "B and C" ivory and light tan, which was received as plaintiffs' exhibit 1. The felts come generally in panels 6 and 12 feet wide, but sometimes are up to 20 feet in width in continuous lengths up to 40, 50, and as much as 100 feet. After importation they are put through a washing and dyeing process. In the washing procedure, the felts are scoured with acids and various commercial detergents, and while in the washing machines they are colored with various dyes, depending upon the color desired. The felts are then dried and cut into smaller panels usually from 20 to 40 inches in width and in desired lengths, determined by size and pattern being produced. A sample of the felt after being washed, dried, and cut into 20-inch panels was received as plaintiffs' exhibit 2.

After being cut into panels, the felts are stacked to form patterns of various rugs made in the mill. The panels are then sewn together in continuous lengths, depending on the size of the rug being made, and then cut into small slit pieces 1¼ inches in width and running up to 300 or 400 feet long. Plaintiffs' exhibit 3 is said to be one of such strips. Braided rugs and hand-sewn rugs are made from the strips. In making the braided rugs from the strips, they are run through a looper machine to fold them and thereafter through a braiding machine which forms the "typical 3-type of braid." The braids are then taken to tables where they are sewn together to a desired size. A sample of slitted pieces was received as exhibit 3. A sample of a braided rug was received as plaintiffs' exhibit 4 and consists of various strips woven together. Securely attached to exhibit 4 is a label setting forth that it is a "custom braided wool rug," fashioned from a superb wool felt, further strengthened with nylon.

Mr. Friend testified that hand-woven rugs are only made in rectangles, 2 feet 6 inches to 20 feet 6 inches in width and in lengths up

to approximately 100 feet. Such rugs are made from strips which are simply folded, placed in bobbins, and taken to the hand-operated looms, where they are made into rugs of desired size. A sample was received as plaintiffs' exhibit 5. Securely attached to exhibit 5 is a label setting forth that it is a "custom loomed carpet" containing 80 percent wool and 20 percent nylon.

The witness stated that exhibits 4 and 5 are representative of the completed product except as to size. According to the witness, tests made by the importer's dyers indicate that exhibit 1 is 80 percent wool and 20 percent nylon. He testified that the imported felts are also reprocessed into blankets but not by his firm and that they carry a similar label showing 80 percent wool and 20 percent nylon.

Upon the court's order, exhibit 1 was sent to the Government laboratory at San Francisco for analysis and report. That report by the customs chemist was received as plaintiffs' exhibit 7, and states: "The fibers constituting the woven fabric are all wool."

As noted, *supra*, there is nothing of record to support defendant's assertion that the "classification of the Collector was intended to embrace the appellation 'wool rags' but as such was technically incorrect." The red ink notation on the special customs invoice, "wool wastes n.s.p.f.," which is usually made by the examiner, was adopted by the appraiser and by the collector. The liquidating clerk sent Customs Form 4371 to the appraiser requesting further information. The appraiser's reply states: "Advisory classification adhered to. *Wool* waste is specifically provided for under Par. 1105." [Emphasis copied.] "Wool waste" is provided for in paragraph 1105(a) of the tariff act, as modified by T.D. 52739. The language now claimed in the Government's brief, "wool rags," is provided for under paragraph 1105(a) of the act, as modified by T.D. 49753. The latter, therefore, could not have been intended by either the examiner, the appraiser, or the collector in the use and adoption of the words "wool wastes n.s.p.f." or "wool waste." There is nothing to support the alleged intention of the collector, nor has defendant offered evidence to establish that the imported felts are in fact "wool rags" as now claimed and urged in its brief.

The classification which defendant concedes is "technically incorrect" is deemed disavowed. Therefore, the actual original classification does not carry any presumption of correctness ordinarily attached to such official action. Nor does the asserted "intended" classification carry such presumptions. *E. Dillingham, Inc.* v. *United States*, 56 Cust. Ct. 222, C.D. 2629 (appeal 5251 dismissed June 21, 1966), citing and quoting from *United States* v. *White Sulphur Springs Co.*, 21 CCPA 203, T.D. 46728, and *International Vitamin Corp.* v. *United States*, 19 Cust. Ct. 76, C.D. 1071, which cites *Smith & Nichols (Inc.)* v. *United States*, 18 CCPA 16, T.D. 43974.

Accordingly, plaintiffs' contention must be considered without giving credence by way of presumptions to either the original classification as "wool waste" under paragraph 1105 (a) of the above act, as modified by T.D. 52739, or the "intended" classification, *supra*, as "wool rags" under the modification in T.D. 49753. The former was repudiated by defendant's counsel, while the latter has not been established as factual by evidence introduced by the defendant.

The evidence in behalf of the plaintiffs shows that the imported felts are 100 percent wool. These felts, as shown by the uncontroverted evidence, are imported in lengths of 40, 50, or up to 100 feet by 6, 12, and up to 20 feet in width. After importation, the felts are made into hand-woven or braided carpets and rugs by process of manufacture which includes washing, dyeing, cutting into strips or panels by rotary knives; put through a looper machine to fold; put through a braiding machine, and sewed on large commercial sewing machines. The various steps in the production of the rugs are envisaged by an examination of exhibit 1, the merchandise under consideration in its condition as imported, and exhibits 2 to 5 heretofore mentioned. It is obvious from a visual examination of exhibit 1 that the imported felts are no longer usable for their original intended use as papermakers felts. A sample is a potent witness. *Alex Block & Company, Inc.* v. *United States*, 53 Cust. Ct. 202, C.D. 2496; *Joseph Markovits, Inc.* v. *United States*, 45 Cust. Ct. 151, C.D. 2216; *United States* v. *The Halle Bros. Co.*, 20 CCPA 219, T.D. 45995; *United States* v. *Fred. Gretsch Mfg. Co., Inc.*, 28 CCPA 26, C.A.D. 120.

The classification of imported merchandise must rest upon its condition as imported. *United States* v. *Baker Perkins, Inc., R. F. Downing Co., Inc.*, 46 CCPA 128, 131, C.A.D. 714; *Worthington* v. *Robbins*, 139 U.S. 337, 341; *Dwight* v. *Merritt*, 140 U.S. 213, 219; *United States* v. *Citroen*, 223 U.S. 407, 414, and cases cited. The felts are for manufacture into rugs and blankets. Thus the use of the products manufactured from these felts after importation may affect the sale and use of very inferior domestic wool and/or wool products. The rugs and blankets manufactured from the imported felts may be to some degree competitive with inferior wool and products made therefrom.

In *United States* v. *Maurice Lobsitz*, 35 CCPA 146, C.A.D. 386, the trial court (17 Cust. Ct. 191, Abstract 51341) was affirmed. In that case, the merchandise was described in invoices as "white wool felts" and "wool felt clips." The trial court stated that they "are pieces or strips of white wool felt, bearing definite indication that they are cuttings from a bolt or large sheet of material. Their appearance [the court found] more accurately responds to the definition of a 'remnant'—'the piece left after the last cutting, as of cloth'—(Funk & Wagnalls New Standard Dictionary) rather than a 'rag,' defined in the

same lexicographic authority as 'A fragment of cloth torn or partly torn from its original connection; especially, a worn, frayed, or torn bit of a garment; hence, figuratively, a fragment, small amount, or semblance of anything; as linen *rags*.'" [Emphasis copied.] After importation, the merchandise was subjected to a chemical treatment and washing process, removing all adhesives and other undesirable substances, and softening the material prior to being processed through a shredder to make it available for its ultimate chief use as stuffing and batting material and as roofing paper. It was wholly unsuitable for spinning purposes and did not compete with the woolen industry, the court found.

The wool felts and wool clips in the *Lobsitz* case, *supra*, were classified as wool rags and assessed with duty at 9 cents per pound under paragraph 1105(a) of the Tariff Act of 1930, as modified by the reciprocal trade agreement with the United Kingdom, T.D. 49753, 74 Treas. Dec. 253. The court held that the wool felts were not wool rags. The Government in the case at bar claims the material involved to be wool rags. The trial and appellate courts in the *Lobsitz* case, *supra*, held that the merchandise there involved was properly subject to duty as alternately claimed by the importer as "Waste, not specially provided for" under paragraph 1555 of the 1930 act, as modified by the above T.D. 49753 at 7½ per centum ad valorem. This is the same as claimed by the importer herein except that the duty is now 4 per centum ad valorem under the same paragraph.

In arriving at its decision in the *Lobsitz* case, *supra*, the appellate court states that the trial court therein was of the view that the legal principle there applicable was announced in the upper court's decisions in *P. Silverman & Son* v. *United States*, 27 CCPA 324, C.A.D. 107, and *P. Silverman & Son* v. *United States*, 32 CCPA 99, C.A.D. 292, and that the only question to be determined was one of fact; that is, "whether or not the instant merchandise comes in competition with wool." The court indicates that in these two cases it reviewed numerous decisions and that it gave careful study to the legislative history of paragraph 1105, *supra*, which was of "great potency in construing paragraph 1105, *supra*."

The merchandise involved in the first of the above two *Silverman* cases was described as follows:

The merchandise consists of so-called Palmer or sanforizing blankets which are in a worn-out condition and no longer serviceable for their original purpose. When new, they are chiefly used in textile finishing operations, and "discarded when they have become so worn and burnt by heat and friction as to render them unsuitable for their original purpose." They are then sold for waste for whatever they will bring. When so dealt in, they are commonly known as dryer felts. They are imported in sizes varying from 3 feet to 40 feet in

width and from 5 feet to 50 feet in length. Some of the merchandise is imported in rolls which have to be unrolled and cut into pieces.

The court found the merchandise fit only for certain special uses, one of which was in the steel industry to brush away the oxidation of steel before it went into the roll, after which it is thrown away. It was unsuitable for any textile or woolen remanufacture.

The merchandise in the first *Silverman* case was classified as "woolen rags" under paragraph 1105, *supra*, and claimed as "Waste, not specially provided for," under paragraph 1555, Tariff Act of 1930. The Customs Court in that case (2 Cust. Ct. 655, Abstract 41031) held that both the classification and claims were erroneous and that the merchandise fell within the provision for "all other wool wastes," not specially provided for, in paragraph 1105, *supra*. It was conceded before the appellate court that the classification was erroneous and that court gave no consideration "to the woolen rag question" but as between "wool wastes," not specially provided for, in paragraph 1105, *supra*, and "waste," not specially provided for, in paragraph 1555, the court held the latter applicable. In so holding, the appellate court stated, after having reviewed the legislative history at length:

From the foregoing it seems reasonable to conclude that Congress, in preparing the wool waste provision, was only concerned about wastes of wool which would influence and affect the sale and use of wool, and we think that a waste which happens to be composed of wool but which cannot, under any circumstances, replace or be competitive with wool, was not intended to be subjected to the high rate of duty of 24 cents per pound. [In paragraph 1105.]

The merchandise in the second of the above two *Silverman* cases consisted of discarded papermill felts ranging from 15 to 18 feet in width and 50 to 75 feet in length. The appellate court in *Lobsitz*, *supra*, quotes from the decision of the trial court therein (12 Cust. Ct. 37, C.D. 827, affirmed C.A.D. 292, *supra*), which had accepted as accurate the following description of merchandise involved therein as given in the importer's brief:

Old paper-mill felts are a discarded article of the paper-making industry. They represent felts which have outlived their usefulness in the manufacture of paper, and *have no further commercial value except for the recovery of their component wool fibers by being processed to a fibrous condition known as wool shoddy.* Their chief use, after being discarded by papermills, is in the manufacture of wool shoddy. These felts are shredded to reduce them to fiber form and then carded or garnetted so as to produce a mass of wool fibers suitable for use in the spinning of yarn to be made into cloth. [Italics quoted.]

The above old papermill felts were classified as "wool wastes," not specially provided for, under paragraph 1105, *supra*. An alternative

claim by the importer that the merchandise should be classified as "waste," not specially provided for, under paragraph 1555, *supra*, was expressly waived before the appellate court. The claim relied upon there was that the merchandise was classifiable as "wool rags" either directly or by similitude under paragraph 1105, *supra*, dutiable at 9 cents per pound. That claim was overruled by the Customs Court. That decision was affirmed by the appellate court which did not approve the above-stated collector's classification.

As noted, *supra*, the only question to be determined in the *Lobsitz* case was one of fact, whether or not the merchandise there involved consisting of pieces or strips of wool felt comes in competition with wool as stated by the trial court therein. The trial court, based upon the oral testimony, coupled with consideration of the samples, held that the merchandise was "in fact, wool waste and not wool rags" and held the merchandise dutiable as "Waste," not specially provided for, under paragraph 1555. Its ultimate chief use, the court found to be as stuffing and batting material, and for roofing paper. The appellate court stated that there was substantial evidence to support the trial court's findings and affirmed that court's holding that the merchandise was classifiable as "waste," not specially provided for, under paragraph 1555 of the Tariff Act of 1930, as modified by T.D. 49753, at 7½ per centum ad valorem.

Thus, worn-out and burnt blankets, *not* usable in the woolen industry were held to be "waste, not specially provided for" under paragraph 1555. (First *Silverman* case.) Discarded old papermill felts 15 to 18 by 50 to 75 feet, made into shoddy, thus usable in the woolen industry, by reason of the legislative history were held neither classifiable under paragraph 1105 as "wool waste," not specially provided for, nor as "wool rags" under said paragraph. The claim for paragraph 1555 as "waste, not specially provided for," was expressly waived before the appellate court. However, the implication is plain that the claim for "waste, not specially provided for," would have been upheld if properly presented. (Second *Silverman* case.)

The merchandise involved in the first of the two *Silverman* cases and in the *Lobsitz* case is not the same as that here under consideration. The merchandise in the second *Silverman* case is substantially the same as is herein involved. The use is somewhat different, one used for shredding to fiber to be used in the spinning of yarn, the other for use as carpets, rugs, or blankets. Their ultimate use was as a substitute for cheap, inferior wool or wool products, and thus usable in the woolen industry. By reason of the legislative history the merchandise in the second *Silverman* case was held not classifiable under paragraph 1105 as "wool wastes," not specially provided for, nor as "wool rags" under said paragraph.

Defendant's brief alleges that the classification of the merchandise in the case at bar as "wool waste," not specially provided for, is "technically incorrect." It is deemed by the court to be disavowed. There is no evidence of record in respect to the claim made by defendant for "wool rags." This claim is, therefore, unsupported. Plaintiffs' protest herein claims the merchandise is dutiable as "waste," not specially provided for. Though the imported felts are used in competition with domestic wool or wool products, we believe the decision in the second *Silverman* case makes clear that Congress did not intend that the imported felts such as now under consideration should be classified as "wool wastes," not specially provided for, under paragraph 1105.

The court in the second *Silverman* case, C.A.D. 292, *supra*, expressly pointed out, page 104, that—

* * * the mere fact alone that the instant merchandise is competitive with wool is not sufficient, in view of other considerations to which we shall presently allude, to require a holding that the instant merchandise properly responds to the term "all other wool wastes not specially provided for."

We are of the opinion that Congress, in framing the provision for "all other wool wastes not specially provided for," did not contemplate that merchandise of the kind at bar should find classification under that provision. We are brought to this conclusion by a consideration of the context of said paragraph and the legislative history bearing thereon.

After discussing the legislative history of the provision under consideration, the court reached the following conclusion, page 107:

It would be difficult to understand why Congress would want to place the same rate of duty on discarded wool paper-mill felts, as much as 75 feet in length, unshredded, as it would upon the finished shoddy, because the record shows, and the textbooks on wool confirm the fact, that much processing and labor must be expended upon the instant merchandise to produce shoddy. It is to be noted that Congress provided in the same paragraph for a duty of 18 cents per pound upon wool rags. It is easy to believe that Congress desired a lower rate of duty on rags before they went into the making of shoddy, than upon the shoddy itself.

From this reasoning, it would seem to follow that Congress did not contemplate that merchandise like that at bar, in its crude unshredded state, should take the same duty (24 cents per pound) as do wool wastes not specially provided for and as does shoddy itself. This is especially true when we consider the fact that the instant merchandise, as the record undeniably shows, is used for the same purpose as the better grade of wool rags, namely, for the making of shoddy, and the fact that practically the same process is used to convert them into shoddy. It would also seem that on account of the size of the instant merchandise, perhaps a little more labor would be required to convert it into shoddy than is required in the case of the average size rags.

The trial court in the above *Silverman* case (C.D. 827) rejected the claim for "wool rags" under amended paragraph 1105 as the size of the felts there involved do not conform to the dictionary definitions of "fragments." The size of the imported felts here involved likewise precludes their classification as "wool rags," a claim now asserted by defendant herein, without proof that they are in fact "wool rags." We think the holding in the *Silverman* case applicable here.

It would, therefore, appear, following the logic of the foregoing two *Silverman* cases and the *Lobsitz* case, that the "Used Wool Paper Makers Felt[s]" involved herein should be classifiable as claimed by plaintiffs, as "Waste," not specially provided for, at 4 per centum ad valorem under paragraph 1555, as modified by T.D. 52739. This would be in accord with the second *Silverman* case, where more or less similar papermill felts in size to the involved merchandise, were usable in the woolen industry as are the felts before us. The only difference is that in the second *Silverman* case the claim under paragraph 1555, *supra*, was expressly waived before the appellate court while herein such a claim is properly presented.

The case of *P. Silverman & Son* v. *United States*, 15 Cust. Ct. 303, Abstract 50611, cited in defendant's brief, is not controlling herein. A stipulation by counsel was held by the court "sufficient for a case on commercial designation and establishes, as a matter of fact, that the merchandise in question is wool rags." In the case at bar, the defendant likewise concedes that the collector's classification as "wool waste," not specially provided for, is incorrect and there is *no stipulation* as to commercial designation and no evidence to support a holding that the herein involved felts are "wool rags." "It is fundamental that commercial designation is a fact which must be proved in each case, like any other fact, by the weight of competent evidence." *The Specialty House, Inc., Bryant & Heffernan, Inc., et al.* v. *United States*, 32 Cust. Ct. 146, 160, C.D. 1596, affirmed in *United States* v. *The Specialty House, Inc., Bryant & Heffernan, Inc., et al.*, 42 CCPA 136, C.A.D. 585.

In *United States* v. *Schumacher & Co.*, 3 Ct. Cust. Appls. 301, 306, T. D. 32586, the court stated:

It may further be noted that the present importers are not foreclosed from their contention, because other importers in other cases formerly maintained a directly opposite claim, even though the present importers personally may have profited by the practice thereby established.

The doctrine of *stare decisis*, urged by defendant with reference to the holding in *Silverman*, *supra*, Abstract 50611, is not persuasive. The importer herein was not a party to the stipulation therein and is not bound thereby. The case of *United States* v. *Dodge & Olcott*,

*Inc.*, 47 CCPA 100, C.A.D. 737, relied upon by defendant herein as applicable on the theory of *stare decisis* is also inapplicable. The appellant, United States, and appellee, Dodge & Olcott, Inc., were the same parties as in *Dodge & Olcott, Inc.* v. *United States*, 45 CCPA 113, C.A.D. 683, which decision was followed in the later case. The parties, pertinent facts, statutory and treaty provisions, contentions, and issues were the same in both cases. That is not the situation in respect to the case at bar and the *Silverman* case, *supra*, Abstract 50611.

In *Mattoon & Co., Inc.*, (*a/c Philip Senegram Co.*) v. *United States*, 42 CCPA 19, C.A.D. 563, merchandise described as "New Pastel Worsted Noodles" and as "New Worsted Sweater Clips," were held to be dutiable as "waste," not specially provided for, under paragraph 1555 and T.D. 49753 and T.D. 50797 at 7½ per centum ad valorem, following *Lobsitz, supra*, rather than as "wool rags" under paragraph 1105(a) and T.D. 49753, as classified.

In *United States* v. *J. Eisenberg, Inc.*, 43 CCPA 105, C.A.D. 616, fragments of new cloth, consisting of wool "clips" and "noodles" were held to be rags, dutiable as "wool rags" under paragraph 1105(a) and T.D. 51802, rather than as "waste," not specially provided for, under paragraph 1555 and T.D. 52739. The merchandise was stipulated to be waste pieces of knitted wool fabric, the same as the "clips" in *Mattoon, supra*, and "noodles" the same as the "noodles" in *Mattoon, supra*. They were stipulated to be chiefly used in the woolen industry for remanufacture into yarn, and ultimately into cloth, the merchandise having been subjected to a picking or shredding process, and a garnetting process to convert it into wool shoddy, a fibrous mass. The court stated that there is nothing in the first two *Silverman* cases, *supra*, "which would negative such a classification" (as "wool rags"). It is of more than passing interest to observe that the court stated:

For the reasons given, we conclude that the instant merchandise is properly classifiable as "Wool rags" under paragraph 1105(a), *supra*. Therefore, the decisions in the *Mattoon* and *Lobsitz* cases, *supra*, are hereby overruled so far as they are inconsistent with the instant decision. * * *

If the decision in the *Eisenberg* case, *supra*, is to be followed, the herein involved felts are *not* fragments, hence not "rags" because of their size. They are *not* dutiable as "wool rags," especially as there is no evidence to that effect. Though the imported felts are used for manufacture into carpets, rugs, and blankets, because of the legislative history they would be dutiable as "waste," not specially provided for, under paragraph 1555, as claimed, at 4 per centum ad valorem. Consistent with such determination is the decision of the majority in *E. Dillingham, Inc.* v. *United States*, 56 Cust. Ct. 222,

C.D. 2629, decided March 17, 1966. In that case, tailor's cuttings were held dutiable under paragraph 1555 and T.D. 52739 at 4 per centum ad valorem, as "waste," not specially provided for, rather than under 1105(a) and T.D. 49753 as "wool rags" as classified at 9 cents per pound, or under 1105(a) and T.D. 52739 as "wool wastes," not specially provided for, at 9 cents per pound. The dissenting opinion turned on the question of commingling under section 508, the judge stating, "I agree with the court that *dehors* section 508, Tariff Act of 1930, the merchandise is not wool rags and the Government has not sustained the burden the court says it assumed."

Based upon the record before us and after careful consideration of the law as enunciated in the above cases, we are of the opinion and hold that the involved imported felts in the case at bar are dutiable under paragraph 1555 of the Tariff Act of 1930, as modified by T.D. 52739, at 4 per centum ad valorem, as "Waste, not specially provided for."

Accordingly, judgment will be entered sustaining the protest.